[No. 7666–3–I.   Division One.   March 24, 1980.]

THE STATE OF WASHINGTON, *Appellant,* v. RONALD
DALE PERRY, *Defendant,* MARK V. LARSEN
*Respondent.*

*Russ Juckett, Prosecuting Attorney,* and *James B. Roche, Deputy,* for appellant.

*Kris Fluhrer* of *Snohomish County Public Defender Association,* for respondent.

JAMES, J.—This case concerns speedy trial rule CrR 3.3.

Defendant Mark V. Larsen was arrested in July 1977 and released on personal recognizance. At that time, defense counsel was appointed and the prosecutor's office was so notified. Larsen was charged by information with second-degree burglary in March 1978, at which time a summons was mailed to the address he had given at the time of his arrest. After the summons was returned as undeliverable by the post office and Larsen failed to appear for arraignment, a bench warrant was issued for his arrest. Larsen's whereabouts became known to the prosecutor in January 1979 after his arrest in Chelan County on a traffic charge. He was thereafter arraigned on the burglary charge.

In February 1979, Larsen moved to dismiss for violation of CrR 3.3; Judge Paul D. Hansen denied the motion. After Larsen's conviction at jury trial in April 1979, Judge Robert C. Bibb "reconsidered" Judge Hansen's earlier ruling and dismissed the charge against Larsen. The State appeals. We reverse.

Former CrR 3.3(f)[1] provided:

> If and in event the defendant is absent and thereby unavailable for trial or for any pretrial proceeding at which his presence is required, the time period specified in section (b) or (c) shall start to accrue anew upon defendant's being actually present in the county wherein the criminal charge is pending, and his presence appearing upon the record of the court.

CrR 3.3(b) provided that a defendant who obtained pretrial release shall be brought to trial within 90 days of his preliminary appearance.

The 90-day speedy trial period would have started on the day of Larsen's scheduled arraignment in March 1978 if he had appeared. The only question is whether the speedy trial period began anew in January 1979 because Larsen was "absent and thereby unavailable" in the interim. Former CrR 3.3(f). We hold that it did begin anew, and that Larsen was therefore brought to trial in timely fashion.

---

[1]Although CrR 3.3 was amended in November 1978, the operative language of former CrR 3.3(f) was unchanged; it is now CrR 3.3(h).

■ Before the State can rely on former CrR 3.3(f), it must demonstrate "good faith and diligent efforts to obtain the availability of the defendant." *State v. Peterson*, 90 Wn.2d 423, 428, 585 P.2d 66 (1978); *State v. Alexus*, 91 Wn.2d 492, 588 P.2d 1171 (1979). Here, the State in full compliance with the court rules obtained a summons for Larsen's appearance, served it by mail, and then obtained a warrant for his arrest. CrR 2.2(a), (b)(2), (d)(2). We hold that even though the State could in fact have located Larsen either through his attorney, or through his parents, whose address was known, its actions in trying to locate him were sufficient to constitute a diligent, good faith effort. We agree with Judge Hansen, who observed as follows in his memorandum opinion denying the motion to dismiss:

> *State vs Alexus,* 91 Wn.2d 492, and the ABA standards notwithstanding, the law of this state has not yet reached the point where the Prosecuting Attorney, or the law enforcement agencies, have to physically go out and search the countryside for defendants who have either given the wrong address to the Court or who moved from that address without leaving forwarding information. "Good faith diligent efforts to locate the defendant" are satisfied by sending a letter to the defendant at his last known address. To require more would involve the Court in the never ending search for the answer to the question, "How much is enough?" When is, "Good faith and diligent effort" satisfied? Does the Prosecutor have to ask neighbors? How many neighbors? Does the Prosecutor have to search out the relatives? If so, which ones, father, mother, brother, sister, uncles, aunts, cousins? Does the Prosecutor have to check the local State Unemployment Office, the local Health District? The possibilities are endless, and the obvious fact is that no prosecutor's office staff has the capacity to make even a cursory search. It appears in this case that had the Prosecutor's office asked the defendant's attorney where the defendant might be located, he could have received an answer. It is possible that if he had asked the courthouse cleaning lady she would have known, but it did not occur for him to ask

either. After the fact knowledge cannot be used to set the parameters of the initial inquiry.

Larsen contends that *State v. Peterson, supra, State v. Alexus, supra,* and *State v. Hattori,* 19 Wn. App. 74, 573 P.2d 829 (1978) support his position that the State failed to exercise due diligence in trying to locate him. We do not agree.

*Peterson* and *Alexus* both found violations of CrR 3.3. However, in *Peterson* at page 426, "[t]he record fails to reflect *any* action by the prosecutor designed to bring respondent to trial . . . and appellant concedes that . . . no effort was made to locate, and determine the availability of, the respondent." (Italics ours.) Similarly, in *Alexus* at page 496, "the prosecutor made *absolutely no effort* to locate Alexus during the 6 months following filing of the information." (Italics ours.) *Hattori* has no application to the facts of this case. There, the only speedy trial question was whether a 2-week period between Hattori's waiver of extradition in California and his subsequent return to Washington was includable in the speedy trial timetable.

Reversed.

CALLOW, C.J., and DORE, J., concur.