[No. 4632–II. Division Two. August 6, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. ELLEN
P. JOHNSTON, *Appellant.*

*Craig A. Ritchie,* for appellant.

*Grant S. Meiner, Prosecuting Attorney,* for respondent.

PETRIE, J.—Ellen P. Johnston was charged in Superior Court for Clallam County with the crime of first degree theft (embezzling in excess of $1,500 from her employer during the month of November 1979). Upon her failure to comply with a pretrial discovery order,[1] the court held her in contempt and imposed sanctions. She appealed and the State moved for a stay of the trial which had been set for May 19, 1980. Ms. Johnston opposed the stay on the ground that she would thereby be denied a right of speedy trial. We granted the stay and ordered accelerated review. We reverse the contempt order and remand the cause for trial on the merits.

 It is firmly established that the privilege against self–incrimination constitutionally guaranteed by both the state and federal constitutions extends to testimonial or communicative evidence, but does not protect an accused from being the source of real or physical evidence against himself. *Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966); *State v. Moore,* 79 Wn.2d 51, 483

---

[1] The order for discovery ordered in part as follows:

"[T]hat the Defendant be and she hereby is, required to provide to the Clallam County Prosecuting Attorney, on or before the 3rd day of March, 1980, the following information:

"1. Any and all bank accounts, savings accounts, certificates of deposit, stocks and bonds, in which the defendant or her spouse, or both, have, or have had, any interest in, or access to, including any interest in, or access to, any trust accounts, either as Trustee or as Beneficiary, within the past five years, including the complete name and address of the bank holding any such account, including the branch of that bank, the account number, and other identifying information of the accounts, and, in the case of stocks or bonds, the name and address of the entity issuing the stocks or bonds, the numbers of the stocks or bonds, and other identifying information.

"2. Any and all gifts and inheritance in the amount of $250.00 or more, received by the defendant or her spouse, or both, within the past five years, setting out the identity of the source of the gift or inheritance, including the address, the date or dates of the receipt of the gift or inheritance, and the amount of each gift or inheritance."

P.2d 630 (1971). On its face, the discovery order directs Ms. Johnston to furnish *testimonial* information to the State, *i.e.,* to identify all manner of personal financial holdings including gifts and inheritances she may have received in the last 5 years.

There is a vast difference between approving the government's warrant seizure and trial use of a natural individual's personal business records, even while under his personal custody and control, *Andresen v. Maryland,* 427 U.S. 463, 49 L. Ed. 2d 627, 96 S. Ct. 2737 (1976), and the order on review in the case at bench. Ms. Johnston was ordered to name (and therefore to testify in advance of her personal testimony at trial) the kinds and location of her assets and recent financial acquisitions. The historic function of the constitutional privilege has been to protect a natural individual from compulsory incrimination through his own testimony or personal records. *Bellis v. United States,* 417 U.S. 85, 40 L. Ed. 2d 678, 94 S. Ct. 2179 (1974). In other words, the privilege prevents the use of legal process "to force from the lips of the accused individual" any and all evidence necessary to convict him or "to force him to produce and authenticate any personal documents or effects that might incriminate him." *Bellis v. United States, supra* at 88.

The discovery order clearly violated Ms. Johnston's state and federally guaranteed privilege against self–incrimination.

We are constrained to add a postscript to this opinion, however, because the State relies in great part on statements which appear in two of our prior opinions.

*State v. Perkerewicz,* 4 Wn. App. 937, 486 P.2d 97 (1971) (also an embezzlement case), expresses in dictum some approval of the prosecution's authority, in a nontax criminal prosecution, to obtain through discovery a copy of the accused's income tax return. After noting that neither the document nor anything disclosed therein was used in the *Perkerewicz* trial, we gratuitously offered the statement, "Obtaining a copy of an income tax return does not involve

testimonial compulsion." That statement, broad as it is, must be viewed in the light of a later and more appropriately articulated statement of the law in *Garner v. United States,* 424 U.S. 648, 47 L. Ed. 2d 370, 96 S. Ct. 1178 (1976), that a taxpayer who reveals incriminating information on his income tax form without having claimed the privilege has lost the benefit of that privilege in a subsequent nontax criminal prosecution. Again, the discovery order in the case at bench is considerably more extensive than the order to which we gave some measure of approval in *Perkerewicz.*

In *State v. Nelson,* 14 Wn. App. 658, 545 P.2d 36 (1975), we upheld a trial court order holding a defendant in contempt for failure to comply with a discovery order which required him (1) to state the general nature of his defense, (2) to state whether he intended to rely on the defense of alibi and, if so, to provide a list of alibi witnesses, and (3) to provide a list of general defense witnesses and their statements. Those are all matters specifically set forth as a defendant's obligations under CrR 4.7(b) when discovery of them is timely demanded by the prosecution.[2]

In the case at bench, the prosecution's reliance on *Nelson* is totally misplaced. Here, Ms. Johnston was required to

---

[2]CrR 4.7(b) provides in part:

"Defendant's obligations.

"(1) Except as is otherwise provided as to matters not subject to disclosure and protective orders, the defendant shall disclose to the prosecuting attorney the following material and information within his control no later than the omnibus hearing:

"(i) the names and addresses of persons whom the defendant intends to call as witnesses at the hearing or trial, together with any written or recorded statements and the substance of any oral statements of such witness.

"(2) Notwithstanding the initiation of judicial proceedings, and subject to constitutional limitations, the court on motion of the prosecuting attorney or the defendant, may require or allow the defendant to:

". . .

"(xii) state whether or not he will rely on an alibi and, if so, furnish a list of alibi witnesses and their addresses;

". . .

"(xiv) state the general nature of his defense."

furnish from her lips pretrial testimonial evidence potentially usable to convict her. Much more information was sought than the general nature of her defense and a list of defense witnesses and *their* statements. The State insists that it is merely anticipating her defense that her newfound wealth was obtained from sources other than embezzled funds. Thus, it asserts, the information was sought in order to avoid a midtrial delay. Such a prosecutorial posture presents the possibility that the State intends to prove its case in part at least by demonstrating an increase in her "net worth." Even if the State does not intend to prove the commission of the crime by this method (and it merely intends to prove, for example, that she engaged in a spending spree shortly after November 1979), the potential for "net worth" proof could be furnished by Ms. Johnston's compliance with the discovery order. In that case she will have been forced to provide to the State self–incriminatory evidence "from the lips of the accused."

The order for discovery in the case at bench is not in any manner limited to listing documents discoverable under CrR 4.7 and which Ms. Johnston intends to use at trial. The order is simply too broad and must fail because of that fact.

We turn then to Ms. Johnston's contention that the stay order denies her the right to a speedy trial. She recognizes the validity of CrR 3.3(e)(5) which then provided that delay resulting from the granting of a stay by an appellate court shall be excluded in computing the time for trial. She asserts, however, that she cannot be required to waive one constitutional right (speedy trial) in order to protect another constitutional right (refusing to produce evidence against herself).

The fallacy in her argument lies in the fact that CrR 3.3 defines a judicially granted procedural right to a speedy trial; it does not define the limits of the constitutional right to speedy trial. *State v. Mack,* 89 Wn.2d 788, 576 P.2d 44 (1978); *Seattle v. Crockett,* 87 Wn.2d 253, 551 P.2d 740 (1976). Before dismissal of a criminal charge is warranted

because of a violation of the constitutional right to speedy trial, an accused must demonstrate prejudice to his defense arising from the delay, purposeful delay designed to oppress, or long and undue imprisonment awaiting trial. *State v. Christensen,* 75 Wn.2d 678, 453 P.2d 644 (1969). In the case at bench there is patently no violation of the judicial rule, and there is no indication of prejudice, purposeful delay, or undue imprisonment which would warrant application of the constitutionally guaranteed right.

The contempt order is reversed, and the cause is remanded for trial on the merits.

PEARSON, A.C.J., and PETRICH, J., concur.