[No. 6674-2-II.    Division Two.    January 10, 1985.]

THE STATE OF WASHINGTON, *Appellant,* v. TERRI A. WIRTH, *Respondent.*

*C. Danny Clem, Prosecuting Attorney,* and *Kenneth G. Bell, Deputy,* for appellant.

*William G. Knudsen,* for respondent (appointed counsel for appeal).

PETRIE, J.—The State appeals dismissal of an information filed against Terri Wirth for sale of a controlled substance. The issue on appeal is the propriety of the trial court's dismissal for excessive and unjustified delay between the filing of the information and arrest. We affirm.

On January 16, 1980, an information was filed, and a warrant for arrest was issued, charging Wirth with selling a controlled substance to two police informants on September 16, 1979. Wirth was arrested June 5, 1982, and arraigned June 8, 1982. Until her arrest, Wirth was unaware that she had been charged or was being sought. Her motion to dismiss was granted September 23, 1982.

The focus in this case is on the actions of Wirth and of the Kitsap County Sheriff's Office between January 1980 and June 1982. Wirth moved and changed jobs several times within this period, remaining in Kitsap County for all but a brief time. Some detail is necessary. Until October 1, 1979, Wirth shared with Bobbie Baker the Callow Avenue apartment in Bremerton where the sale is alleged to have occurred. The trial court found, and the State does not dispute, that the sheriff's office knew Baker's name and employer from envelopes observed in the apartment at the time of the sale. In October 1979, Wirth and Baker moved to Preble Street, where Baker lived until October 1, 1980. From January to mid–April 1980, Wirth vacationed to her hometown in California. The trial court found, and again the State does not dispute, that Terri Wirth's whereabouts, including her stay in California, were known to Baker and to defendant's sister, Debbie Wirth, who lived at one Bremerton address continuously while defendant was being sought. Debbie was the only "Wirth" listed in the telephone directory. When Terri returned from vacation in mid–April, she lived with Debbie, as Baker had found another roommate. In August 1980, she moved to Harlow Drive. Baker moved in with her when the Preble Street lease expired in

October, and they shared the apartment until August 1982. Each time Terri moved, she left forwarding information with the United States Postal Service, and she kept her Washington State vehicle registration and driver's license fairly current.

Until December 1979, Wirth was employed at the Frances Haddon Morgan Children's Center in Bremerton, where Baker also worked. After returning from California, she was unemployed until August 1980 when she took a 2-month health care position. From October 1980 to November 1981, she ran a day care facility at the Bremerton YWCA, and on October 6, 1981 her name and picture appeared in a local newspaper feature story.

All during this time, the Kitsap County Sheriff's Office held the warrant for Wirth's arrest. The first attempt of service was February 14, 1980, 1 month after issuance, when a deputy sheriff went to the Callow address and was told Wirth no longer lived there. No further investigation was conducted at that time, and the warrant was returned to the records clerk. In October 1980, a second attempt at service was made at the Preble Street address, which the clerk testified was probably obtained through a vehicle registration check at an unspecified date. The deputy was again told Wirth did not live there, again made no further inquiry or investigation, and again returned the warrant to the records clerk. The Harlow Drive address was obtained May 17, 1982, after Wirth witnessed an unrelated incident.

The trial court found that Wirth was amenable to process at all times, even when out of state, because her whereabouts were known to her sister who lived in the area and to her former roommate who was known to the sheriff's office. The court also found that the delay between filing the information and arrest was excessive, and that Wirth did not cause the delay. Further, the court found that the State had not made a good faith, diligent effort to arrest Wirth, concluded that her speedy trial right had been violated, and dismissed the case. We affirm the trial court's findings and conclusions, and hold that the case was prop-

erly dismissed.

When inordinate delay has occurred between the filing of the information and arrest, the period during which the accused must be brought to trial begins when the information is filed. *State v. Striker,* 87 Wn.2d 870, 875, 557 P.2d 847 (1976); *State v. Allen,* 36 Wn. App. 582, 676 P.2d 501 (1983). For purposes of this appeal we will consider that defendant was "unavailable" when she was outside the jurisdiction. Thus, the time period began in mid–April 1980 when Wirth returned from California.

We consider, then, whether other periods of justifiable delay should also be excluded on the theory that she was "unavailable." *State v. Peterson,* 90 Wn.2d 423, 585 P.2d 66 (1978). The appropriate emphasis is on the efforts made rather than on specific time limits. Unavailability can be shown *only* if the prosecution demonstrates *good faith and diligent efforts* to obtain the availability of the defendant. *State v. Allen, supra; State v. Hattori,* 19 Wn. App. 74, 79, 573 P.2d 829 (1978). It cannot be contended seriously that the two attempts to serve an arrest warrant over 26 months constituted good faith and diligent efforts to obtain the suspect, Terri Wirth, who was unaware of the charges against her and resided in Kitsap County during that time.

How much effort is required? The State contends that it need make only diligent efforts given the information it has. Even were we to agree, the minimal efforts made here would not suffice. Where law enforcement officials have information which could lead readily to the person sought through standard follow–up inquiries, those leads must be pursued. To allow otherwise would permit officers to close their eyes and ears to information openly available, harming both the rights of those accused and the public interest in prompt, thorough police work.

Cases in which reasonable efforts still would not produce the suspect are readily imaginable. Here, however, numerous avenues existed by which Wirth could have been found. Her roommate's name and workplace were known; her sister's name was in the telephone book; forwarding informa-

tion had been left; vehicle registration records were easily checked. Evidence indicated that a bill collector had found Wirth through Baker and that unpaid parking tickets had reached her. A simple telephone call could have located her. While we are acutely aware of the heavy load law enforcement agencies carry, they are *investigative* agencies, and have a duty to employ their investigative resources. They simply cannot wait for information to reach them or for a suspect inadvertently to produce herself.

Numerous cases under differing versions of CrR 3.3 have applied the standard of good faith, diligent, or reasonable efforts. Where no efforts at all were made, dismissal is clearly required. *State v. Peterson,* 90 Wn.2d at 426; *State v. Alexus,* 91 Wn.2d 492, 496, 588 P.2d 1171 (1979). Where some effort has been made, whether the standard has been met is often a close question. *See, e.g., State v. Perry,* 25 Wn. App. 621, 612 P.2d 4 (1980), where the court did not require telephone calls to known persons when a summons sent to the address given by the accused had been returned as undeliverable. As with all such standards, only a case–by–case evaluation can protect speedy trial rights and policies adequately. Factors for consideration include the accused's awareness of the pending charges, the accused's fault in causing the delay, including "connivance," and the amount and nature of information known to authorities. *State v. Carpenter,* 94 Wn.2d 690, 619 P.2d 697 (1980); *State v. Peterson, supra.* These factors led the trial court to determine that the efforts made in arresting Wirth were insufficient and the delay not justified. The record amply supports that decision.

In sum, the speedy trial rules contemplate that if an indictment is filed before arrest, the accused will be brought before the court promptly if she is amenable to process. *State v. Striker,* 87 Wn.2d at 877. For at least 26 months, Wirth lived openly in Kitsap County where she could have been located without difficulty. Some delay may be justified where good faith, diligent efforts to locate an accused are made. Where, as here, such efforts have not

been made, regard for the protection of individual rights and considerations of policy in the administration of justice compel dismissal. *Striker,* 87 Wn.2d at 875.

Judgment affirmed.

REED, J. (concurring)—I concur in the result only because we are bound to follow *State v. Striker,* 87 Wn.2d 870, 557 P.2d 847 (1976). I am confident the changes in CrR 3.3 were intended to start speedy trial time periods from arraignment. I cannot say convincingly that they have done so, however, in light of *Striker's* reading of CrR 3.3 in conjunction with CrR 2.2, 4.1 and unadopted ABA standards.

I confess I always have had difficulty with the concept that delay between filing an information and defendant's arrest in some way harms the defendant or society and must result in dismissal with prejudice. Our speedy trial rules are tough enough on the prosecution as it is, without making them more so.

In my view a defendant should be made to prove actual prejudice from any delay before dismissal is considered. In the real world, it is nearly always the defendant who seeks to delay his day of judgment.

Some strictures on the prosecuting attorney are called for, but none so drastic as prescribed by *Striker* and its progeny.

WORSWICK, C.J. (dissenting)—In my view, a fair reading of the cases cited in the lead and concurring opinions requires nothing more of law enforcement than what was done here. A defendant cannot be considered unavailable *if his whereabouts are known* and no reasonable effort is made to bring him into court. *State v. Peterson,* 90 Wn.2d 423, 585 P.2d 66 (1978); *State v. Hattori,* 19 Wn. App. 74, 573 P.2d 829 (1978). This means that law enforcement is expected to act on the information it has, but that is all it means.

Charges have been dismissed for lack of diligence only in those cases where the State knew the whereabouts of the

accused but made no effort to bring him to trial within the time limits of the rule.[1] If the police had no idea where he was or had been given a wrong address, the accused was considered unavailable until appropriate authorities were informed of his whereabouts. *E.g., State v. Bledsoe,* 31 Wn. App. 460, 643 P.2d 454 (1982); *State v. Perry,* 25 Wn. App. 621, 612 P.2d 4 (1980).

This case is factually similar to *State v. Perry, supra.* Here, as in *Perry,* the police had a wrong address. In *Perry,* they mailed a summons which was returned as undeliverable. A warrant was then issued but no attempt was made to execute it until the prosecutor learned of Perry's arrest in another county. The court found that the State had acted with sufficient diligence. It was not required to. contact the defendant's parents (whose address was known), or his attorney. *State v. Perry,* 25 Wn. App. at 623. *Perry* cannot be significantly distinguished.[2]

The Kitsap County authorities checked both of the

---

[1] In *State v. Carpenter,* 94 Wn.2d 690, 619 P.2d 697 (1980), the Olympia police not only knew the accused's address, they had contacted him there, and he had come into the station at their request. The information in *State v. Alexus,* 91 Wn.2d 492, 588 P.2d 1171 (1979) indicated that the defendant was in the Clark County Jail, and officials there would have informed the prosecutor that he had been transferred to Walla Walla. However, no effort was made to contact him. In *State v. Peterson,* 90 Wn.2d 423, 585 P.2d 66 (1978), police knew where the accused lived and corresponded with him at least twice. In *State v. Striker,* 87 Wn.2d 870, 557 P.2d 847 (1976), the defendants' attorney knew their whereabouts and he kept in touch with police. Moreover, one of the defendants was actually brought in for a court appearance. In *State v. Williams,* 87 Wn.2d 916, 557 P.2d 1311 (1976), the defendant remained in custody from the time of his arrest, shortly after the information was filed, until his trial. In *State v. Allen,* 36 Wn. App. 582, 676 P.2d 501 (1983), the action was ultimately dismissed because the State did not act promptly after the defendant's lawyer contacted police and gave them his new address. He was considered unavailable until that time, however. In *State v. Breaux,* 20 Wn. App. 41, 578 P.2d 888 (1978), investigators obtained an accurate address for the defendant the day after the crime, and included it on the warrant information form, but made no timely use of it.

[2] The only substantial difference is that Perry knew he was being sought, while Wirth did not. Since unavailability does not involve fault on the part of the defendant (*see State v. Carpenter,* 94 Wn.2d at 693–94), that difference is not important.

addresses they had for Wirth and found that she no longer lived at either one. They kept her file active and, when another address was discovered, acted on it promptly. This was enough to constitute a diligent, good faith effort under existing case law as I read it. We cannot require more without imposing a standard too subjective to provide meaningful guidance. The charges should not have been dismissed. I would reverse.[3]

Review denied by Supreme Court March 15, 1985.

---

[3]The trial judge also concluded that Wirth's constitutional right to a speedy trial had been violated. This conclusion was not supported by any convincing evidence in the record and cannot be upheld. *See State v. Schapiro,* 28 Wn. App. 860, 626 P.2d 546 (1981); *State v. Johnston,* 27 Wn. App. 73, 615 P.2d 534 (1980).