[No. 34768-3-I.  Division One.  July 31, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. CARL L. JONES, *Appellant*.

*Mark D. Mestel* and *Mestel & Muenster*, for appellant.

*James H. Krider, Prosecuting Attorney*, for respondent.

PER CURIAM. — Carl Jones argues his right to a speedy trial was violated and that the trial court erred by denying his motion to dismiss the criminal charge against him. We find that the State failed to exercise due diligence in bringing Jones before the court and therefore the Striker rule applies, requiring that a constructive arraignment be set. Because he was not tried within 90 days of the constructive arraignment, the charge should be dismissed.

I

On June 1, 1992, the State filed an information charging Carl Jones with attempted possession of cocaine. Over a year later, on June 16, 1993, Jones was arraigned. He timely objected to the arraignment and date of trial and moved to dismiss the charge for violation of the speedy trial rule.

Following a hearing on the motion, the court denied the motion to dismiss. The court's written findings of fact set forth the following undisputed facts.

On August 1, 1991, the police arrested Carl Jones for attempted possession of cocaine. At the time of his arrest, Jones provided Detective Bard with his home address in Seattle. He also provided his message phone number that belonged to his father. Jones told Detective Bard that he worked as a fisherman in the Gulf of Alaska and he was currently between jobs.

Several weeks after his arrest, Jones telephoned Detective Bard. Jones said he was going to Alaska on a job. Detective Bard indicated that typically charges would be forwarded to the prosecutor's office within one or two months.

After the telephone call, but before the information was

filed, Jones made a number of trips between Seattle and Alaska. Between August 1991 and June 1993, he spent approximately eight months in Alaska.

On June 1, 1992, ten months after Jones' arrest, the State filed an information charging him with attempted possession of cocaine. On that same day, a summons ordering Jones to appear was sent by certified mail to his Seattle address. Between June 4 and June 19, the post office made three attempts to deliver the letter. Each time the letter was unclaimed.

Jones was in Alaska at the time the post office attempted delivery. He returned to his Seattle residence in July 1992. When he returned, he found no slip from the post office indicating an attempt to deliver certified mail.

Jones failed to appear at the June 15, 1992 arraignment. A bench warrant was issued on June 17. When the summons was returned to the prosecutor's office, a notice was sent to the South Snohomish County Narcotics Task Force, the agency with which Detective Bard worked, indicating that Jones had failed to appear at the arraignment.

On June 5, 1993, Jones was arrested on the outstanding bench warrant pursuant to a traffic stop. It is undisputed that "[n]o other efforts were made by the State to bring the defendant before the court for arraignment" until Jones was arrested on the warrant and that Jones "had no actual notice that he had been charged or that he had missed his arraignment."

The court denied Jones' motion to dismiss. The court's written conclusions of law provide in part:

Jones provided his correct address to the State. The defendant had not moved from that address, but he was not regularly available at that address. These circumstances are not different from *Perry*, [*infra*] where the State served a summons and it was returned as undeliverable. The State has met its burden of good faith and due diligence by sending a summons to the defendant's last known address by certified mail.

Jones was subsequently found guilty following a stipulated facts trial.

## II

■ The speedy trial rule, CrR 3.3, provides time limits within which criminal defendants must be brought to trial. Defendants such as Jones, who remain out of custody, must be tried within ninety days after arraignment. Although CrR 3.3 does not specify the applicable time limits for arraignment, CrR 4.1 requires that defendants be promptly arraigned once charges are filed. The courts have interpreted CrR 3.3 as imposing a similar requirement. *State v. Greenwood*, 120 Wn.2d 585, 591-94, 845 P.2d 971 (1993). Jones argues that his right to a speedy trial was violated by the twelve-month delay between charging and arraignment.

■ When a "long and unnecessary" delay occurs between charging and arraignment, the "*Striker* rule" applies, and the court will set a constructive arraignment date which starts the speedy trial period. *Greenwood*, 120 Wn.2d at 591-95 (under current version of CrR 3.3, constructive arraignment is set fourteen days after information filed); *State v. Striker*, 87 Wn.2d 870, 557 P.2d 847 (1976). Because only unnecessary delay triggers the *Striker* rule, it does not apply if the State acted in good faith and with due diligence in attempting to bring the defendant before the court for arraignment. *Greenwood*, 120 Wn.2d at 601.[1] Whether the State exercised good faith and due diligence necessarily turns upon the facts of each case. *Greenwood*, 120 Wn.2d at 601.

Here, the State argues that it exercised good faith and due diligence by sending the summons to Jones at his only known address. Relying solely on *State v. Perry*, 25 Wn. App. 621, 612 P.2d 4 (1980), the State maintains that it was not required to take any further steps.

In *Perry*, the State sent a summons to the address

---

[1]Likewise, the *Striker* rule does not apply if the delay is attributable to the defendant's "connivance." No such argument is made in this case.

provided by defendant at the time of his arrest. Because he had moved without advising the State, the summons was returned as undeliverable. While the State could have located the defendant by inquiring of either his parents or his attorney, the court held the State had acted diligently by sending the summons to defendant's last known address:

> [L]aw enforcement agencies [are not required] . . . to physically go out and search the countryside for defendants who have either given the wrong address to the Court or who moved from that address without leaving forwarding information.

*Perry*, 25 Wn. App. at 623.

But this case is different from Perry. Here, it is critical that Jones neither gave the wrong address nor moved without advising the State. Also, it is critical that he did not have notice that he had been charged or that he had missed his arraignment. Several cases underscore the significance of the accused's lack of actual notice.

In *State v. Williams*, 74 Wn. App. 600, 875 P.2d 1222 (1994), the State sent a summons to the defendant by certified mail ordering him to appear for arraignment on a charge of first degree theft. Several facts parallel this case. Although the State possessed the defendant's correct address, the summons was returned as "unclaimed." Also, the defendant never received the summons and he remained unaware of the charge until he was arrested on the bench warrant over three years later. Finally, once the summons was returned, neither the investigating agency nor the prosecutor took any further steps either to notify the defendant of the charge or to serve the bench warrant.

This court rejected the State's argument that under *Perry* it exercised due diligence by sending a letter to the defendant's last known address. The court distinguished *Perry* because in that case the defendant knew of the pending charges and he changed his location without providing the State with accurate information of his whereabouts.

In those circumstances, sending a letter to his last known address constituted due diligence. But in *Williams*, as here, the defendant did not know of the charges. Therefore, the court rejected "the bald assertion made by the State that, after a summons is 'properly sent' and the defendant fails to respond, the prosecutor is not required to take further steps to locate the defendant . . . ." *Williams*, 74 Wn. App. at 604. The court affirmed the trial court's dismissal of the charge.

In *State v. Kitchen*, 75 Wn. App. 295, 877 P.2d 730 (1994), the case turned upon whether defendant had actual notice. Although the summons was mailed to his correct address, the defendant filed an affidavit averring that he did not receive it. The court noted: "The State may assume, and the trial courts should presume, that a letter sent by regular first-class mail to the defendant's correct address and not returned to the sender was delivered, and that the defendant was given notice of the charge filed against him." *Kitchen*, 75 Wn. App. at 298. But the presumption is rebuttable. Thus, if a defendant convinces the court that he or she was without fault in failing to appear at arraignment, the court must then examine the State's diligence in attempting to notify the defendant. Because the trial court failed to take facts on this specific issue, this court remanded for a finding regarding whether defendant received actual notice of the original arraignment.

This court issued several warnings during the course of its decision. It noted that because the actual-notice presumption is rebuttable, "the State should exercise caution in failing to take any further steps to notify defendants who fail to appear at their scheduled arraignments." *Kitchen*, 75 Wn. App. at 298 n.1. Also, the court was "not inclined" to agree that simply mailing a notice to a correct address constitutes due diligence. Instead, other factors, including other information regarding defendant's location which the State possesses, may have an impact on the due diligence analysis. *Kitchen*, 75 Wn. App. at 299-300.

In this case, the State diligently sent the summons by certified mail to Jones ordering him to appear for arraignment. This summons was returned as "unclaimed." Because it was not "rejected" or "undeliverable," the State was alerted that Jones simply did not receive it. When Jones failed to appear at arraignment, the State took no further steps to either notify Jones of the charge or to serve the bench warrant. Yet, the State possessed his correct address and a message telephone number. The State knew that his employment frequently took him out of state, but that the absences were temporary and that his residence was in Seattle. In these circumstances, the State failed to diligently act upon the information it had regarding Jones' whereabouts.

Although the State maintains it acted diligently, it also argues that its diligence need not be examined because Jones was out of state and therefore not amenable to process. In *State v. Hunnel*, 52 Wn. App. 380, 760 P.2d 947 (1988), the court rejected a nearly identical argument. There, after defendant was interrogated, but before charges were filed, he moved to Oregon for approximately 6 months, after which time he returned to Washington. Although the court recognized that defendant was not amenable to process during his absence from the State, the court rejected the State's argument that his absence made him "unavailable." First, the court noted that under the current version of CrR 3.3, unavailability is no longer an excluded period. Second, and more importantly, "the prosecutor still must demonstrate 'good faith and diligent efforts to obtain the availability of the defendant.'" *Hunnel*, 52 Wn. App. at 386 (quoting *State v. Peterson*, 90 Wn.2d 423, 428, 585 P.2d 66 (1978)). Yet, the State made no efforts to notify Hunnel of the charge. "When the State sits idly by and does nothing with the information available to it, it cannot claim that it made a good faith effort to locate the defendant." *Hunnel*, 52 Wn. App. at 386.

As in *Hunnel*, the State did nothing with the information available to it once it was alerted that Jones did not

receive the summons. The State failed to exercise good faith and due diligence in attempting to notify Jones of the charge against him. Because the delay between charging and arraignment was unnecessarily long, the *Striker* rule applies. Jones was not brought to trial within 90 days of the constructive arraignment. Thus, CrR 3.3(i) requires that the charge against him be dismissed with prejudice.

We reverse and remand for dismissal of the conviction.
Review denied at 128 Wn.2d 1009 (1996).