[No. 43590-6-I. Division One. August 7, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. BRENDA ROCHELLE ANDERSON, *Appellant*.

406

*Sharon J. Blackford* (of *Washington Appellate Project*), for appellant.

*James H. Krider, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

ELLINGTON, J. — Twenty-three months passed between the time the Snohomish County prosecutor charged Brenda Anderson with a felony and the time she was arraigned. Anderson sought dismissal of the charges, arguing that the State did not act with due diligence to locate her. But Anderson's failure to receive notice of her arraignment was not caused by any lack of diligence on the part of the State; the principal fault was hers. The State concedes that Anderson's whereabouts were easily ascertainable during the last 2 months of the 23-month delay period because she

appeared in court on another criminal matter. Anderson correctly conceded at oral argument that if the speedy trial calculation begins on the date of that appearance, her failure to make timely objection to her arraignment date waived the protections of the rule. We thus affirm.

*Facts*

On December 19, 1995, Brenda Anderson was arrested in Snohomish County for possession of a controlled substance. Anderson told the arresting officer that she did not have a permanent address and was living with friends at various locations. Anderson gave her address as "1207 N. 167th, Seattle, WA." Anderson also provided Pretrial Services with the names and phone numbers of two references. She was released a few hours later; no charges were filed at that time.

On March 20, 1996, in a separate proceeding in the same county, Anderson appeared for sentencing on a forgery charge. Her sentence included 12 months of community supervision. Under Anderson's signature on the judgment and sentence, it appears she wrote "1207 N. 167th, # 1207, Seattle, WA 98133."

That same month, Anderson moved from that address. She lived with a friend for four weeks and in April 1996, she entered an inpatient treatment facility. There was no testimony as to whether Anderson left a forwarding address with the U.S. Postal Service.

On May 24, 1996, Anderson was charged by information with one count of possession of a controlled substance arising out of the incident that resulted in her December 1995 arrest. On the date the information was filed, a summons was sent via regular U.S. mail to 1207 N. 167th, Seattle, WA 98123.[1] A second copy of the summons was sent

---

[1] The zip code on the summons does not match the zip code on the Pretrial Services worksheet from which the State obtained Anderson's address for the summons. The 1207 N. 167th address listed on the summons has the zip code 98123, whereas the interview worksheet clearly reads 98133. Neither Anderson's motion nor brief mentions this discrepancy.

to an address obtained from the Department of Licensing (12345 Lake City Way, NE, #200, WA 98125).

On May 31, 1996, one of the summonses was returned marked "Moved-left no address." It is unclear which summons was returned, because only the envelope was saved and it was a window-type envelope, but the trial court found the summons to the Lake City address was returned. Pretrial Services attempted to contact both of Anderson's references. One telephone number had been disconnected. The other reference reported no contact with Anderson "due to she is in treatment." Pretrial Services also checked the District Court Information System, but found no listing.

Anderson did not appear for her scheduled June 6, 1996 arraignment. An arrest warrant was issued.

Between March 1996 and March 1997, Anderson had no contact with the community corrections officer (CCO) assigned to supervise her for the forgery conviction. Their first contact came after a prospective employer asked Anderson's CCO about her status. The CCO knew Anderson's address by either March or April 1997. On April 30, 1997, Anderson notified the Department of Licensing of her new address.

In August 1997, the CCO sent a notice to Anderson requesting she contact the Department of Corrections to discuss her failure to fulfill her financial obligations for the forgery conviction. Anderson did not respond. On November 13, 1997, the CCO submitted a violation report stating Anderson had made no payments towards her financial obligations. A summons to appear at a violation hearing was sent to Anderson on January 23, 1998. On February 10, 1998, Anderson appeared at that hearing in Snohomish County Superior Court. The prosecutor's office was represented at that hearing.

At some point (the exact date is unclear from the record), Anderson was taken into custody on the warrant. On April 20, 1998, Anderson was arraigned on the possession charge,

and trial was set for July 2, 1998. She did not object to the arraignment as untimely.

On June 1, 1998, Anderson moved to dismiss for violation of her right to speedy trial under CrR 3.3 and the Sixth Amendment to the United States Constitution.[2] At a July 8, 1998 hearing, Anderson testified she never received the information charging her with possession of a controlled substance. The trial court ruled that Anderson's failure to object to the date of arraignment waived her objection, the delay was Anderson's fault, and the State exercised due diligence in bringing her to trial. On July 17, 1998, at a stipulated bench trial, Anderson was convicted as charged.

## *Discussion*

■ Anderson contends that the delay between the filing of charges and her eventual arraignment violated the speedy trial rule, CrR 3.3, and therefore the charge against her must be dismissed under *State v. Striker*, 87 Wn.2d 870, 557 P.2d 847 (1976). Application of a court rule to a particular set of facts is a question of law reviewed de novo. *State v. Ledenko*, 87 Wn. App. 39, 42, 940 P.2d 280 (1997).

■ When a "long and unnecessary delay occurs in bringing a defendant who is amenable to process before the court, CrR 3.3's 90-day trial period is deemed to commence at the time the information was filed, instead of when the defendant finally appeared before the court to answer for the charge." *State v. Greenwood*, 120 Wn.2d 585, 591, 845 P.2d 971 (1993); *Striker*, 87 Wn.2d at 875. Under *Striker*, a defendant is entitled to a dismissal with prejudice where there is a long and unnecessary delay between the filing of the information and arraignment. *State v. Parker*, 99 Wn. App. 639, 640, 994 P.2d 294 (2000).

Because only unnecessary delay triggers the *Striker* rule, courts first determine whether any part of the delay should be excluded from the speedy trial period. *State v. Bazan*, 79

---

[2] The trial court did not rule on Anderson's constitutional argument and Anderson makes no constitutional argument to this court.

Wn. App. 723, 727, 904 P.2d 1167 (1995). "Periods during which the prosecution acts in good faith and with due diligence are excluded from a defendant's time for trial calculation. . . . Any delay caused by the defendant's fault or connivance is also excluded from a defendant's time for trial calculation." *Greenwood*, 120 Wn.2d at 604-05 (citations omitted); *see also State v. Hudson*, 130 Wn.2d 48, 54, 921 P.2d 538 (1996).

 Whether the State acted in good faith and with due diligence depends on the facts of each case. *Bazan*, 79 Wn. App. at 730. "In making this determination the court considers relevant factors, including whether the defendant was aware of the pending charge and the amount and nature of the information known or readily available to the State." *Bazan*, 79 Wn. App. at 730.

The trial court found the State acted with due diligence and that "the reason Ms. Anderson did not receive notice was more her fault than the State's." We agree with the trial court.

 Sending a notice to the defendant's last known address is sufficient to constitute due diligence. *Greenwood*, 120 Wn.2d at 601-02. "Th[e] good faith and due diligence standard should not be construed as imposing the burden of locating a defendant who has failed to provide the prosecution with accurate information regarding his or her whereabouts." *Greenwood*, 120 Wn.2d at 615. When such a notice is mailed to an address given by the defendant, and the notice is not returned, "the reasonable inference is that the defendant has received the notice and the prosecution has therefore acted with due diligence." *State v. Hunsaker*, 74 Wn. App. 209, 211, 873 P.2d 546 (1994); *see also State v. Perry*, 25 Wn. App. 621, 612 P.2d 4 (1980). A letter sent by first class mail to the defendant's correct address and not returned is presumed to have been delivered, and the defendant is presumed to have received notice of the charge. The presumption is rebuttable, however. *State v. Kitchen*, 75 Wn. App. 295, 298, 877 P.2d 730 (1994). A nonappearance implicates the defendant as being at fault. *Kitchen*, 75 Wn. App. at 298.

Here, Anderson denied receiving notice, and the trial court found she did not receive notice. But summonses were mailed to two different addresses; only one was returned. The prosecutor was entitled to rely on the presumption that Anderson received the notice.

Anderson argues, however, that the State failed in its obligation of due diligence at several points. First, she argues that by the date of the scheduled June 1996 arraignment, the prosecution knew Anderson was in an inpatient treatment facility. This argument misstates the record. The prosecution knew only that her reference had no contact with her because she was "in treatment." A vague reference to treatment does not make Anderson's whereabouts readily available, and we decline to impose on the State an obligation to search the nation's or even the county's inpatient and outpatient treatment programs to locate Anderson. It is unlikely such a program would verify her participation in any event, given that federal law prohibits disclosure without written consent of the patient, and only for limited purposes. *See* 42 U.S.C. § 290dd-2; 42 C.F.R. § 2.

▉ ▉ Anderson also argues the prosecution's due diligence ended in April 1997 when her CCO learned her new address. But knowledge of the Department of Corrections as to a defendant's whereabouts is not imputed to the county prosecutor, *State v. Miffitt*, 56 Wn. App. 786, 793-94, 785 P.2d 850 (1990), and there is no evidence the State knew Anderson was under community supervision before February 1998. There appears to have been no contact between the prosecution and Anderson's CCO. In addition, "There is no obligation to check with every agency in the state to determine whether the defendant is somewhere in jail." *Miffitt*, 56 Wn. App. at 794. *See also State v. Bledsoe*, 31 Wn. App. 460, 464, 643 P.2d 454 (1982). While Anderson does not advance the argument, we note that this reasoning also answers any question about the effect of her providing a change of address to the Department of Licensing (DOL). Such a notice would be relevant to the issues here only if

the prosecutor had an obligation to make regular inquiries to DOL to see if persons who fail to appear for arraignment have submitted a change of address form. No such obligation exists.

Anderson relies on *State v. Williams*, 74 Wn. App. 600, 875 P.2d 1222 (1994) and *State v. Wirth*, 39 Wn. App. 550, 694 P.2d 1113 (1985), both of which are distinguishable. In *Williams*, the summons was returned "unclaimed." Except for contacting the Employment Security Department, the prosecutor took no further action, despite the facts that the defendant's telephone number was listed, his driver's license indicated his current address, his cars were registered at that address, he had been stopped by police for traffic infractions three times, police had been called to his home on two separate occasions, and his wife was arrested at his home while he was present. *Williams*, 74 Wn. App. at 602. The court held the State did not exercise due diligence.

In *Wirth*, the defendant moved several times (each time leaving a forwarding address with the U.S. Postal Service); she kept her vehicle registration and driver's license "fairly current"; and her name and picture appeared in a feature story in the local newspaper. *Wirth*, 39 Wn. App. at 551-52. The court held that the State failed to exercise due diligence because "Wirth lived openly in Kitsap County where she could have been located without difficulty." *Wirth*, 39 Wn. App. at 554. The facts here are entirely dissimilar from those of *Williams* and *Wirth*.

In the alternative, Anderson argues that when she appeared in court on February 10, 1998 for her community supervision violation hearing, she was amenable to process, and the State failed to exercise due diligence. The State concedes this point, but argues that because Anderson made no objection to the date of her arraignment, she waived any violation of CrR 3.3.[3] The trial court held, as do we, that Anderson waived the protections of the rule.

Taking the court appearance on February 10 as the

---

[3] Because we agree with the State's waiver argument, we do not separately address whether the State's concession is well taken.

point time began to run under the *Striker* rule, the State had 14 days to arraign and 90 days thereafter to bring Anderson to trial. *See Greenwood*, 120 Wn.2d at 599. Anderson should have been arraigned by February 24th. Anderson was finally arraigned on April 20, 1998. She did not object to the date of arraignment. "The purpose of an objection pursuant to CrR 3.3(e) is to inform the trial court of an alleged error in order to permit timely correction of that error." *Greenwood*, 120 Wn.2d at 606. There was time to correct the error, because at that point the court could have set a trial date within the limits of the rule. Under CrR 3.3(e), therefore, Anderson's failure to object constitutes waiver of objection, and the date of actual arraignment, April 20, 1998, is conclusively established as the date of arraignment. Anderson's trial was set for July 2, 1998, within 90 days from the date of her arraignment.[4] *See* CrR 3.3(c)(1).

Affirmed.

WEBSTER and APPELWICK, JJ., concur.

---

[4] We note that using the February 10 appearance, Anderson's July 2, 1998 trial date violated the 90-day limit for bringing Anderson to trial. Anderson failed to object to an untimely trial date within 10 days of notification of her trial date, however, and thus waived any objection. *See* CrR 3.3(f)(1); *see also Greenwood*, 120 Wn.2d at 611; *State v. Carson*, 128 Wn.2d 805, 818-19, 912 P.2d 1016 (1996).