[No. 27946-1-II. Division Two. December 2, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. LEROY F. AUSTIN, *Petitioner*.

320

*Eric Valley*, for petitioner.

*David J. Burke, Prosecuting Attorney*, and *Lori E. Smith, Deputy*, for respondent.

SEINFELD, J. — This case raises the question of what constitutes sufficient "due diligence" in bringing a defendant before the court for arraignment so as to avoid application of the *Striker*[1] rule. During a police investigation, Leroy F. Austin provided the police with the name and telephone number of a contact person who he alleged could provide his current address. The State later filed a criminal charge against Austin and issued a warrant for his arrest, but it made no attempt to determine Austin's address or to otherwise advise him of the charges. We hold that under these circumstances the State failed to exercise due diligence, a deficiency that led to a 13 month delay between charging and Austin's arraignment. But as the State did not have an opportunity to show that calling the contact would have been futile, we remand for the taking of further evidence and a determination on whether to dismiss for violation of speedy trial rights under former CrR 3.3 (1995).

## FACTS

In February 2000, Pacific County Sheriff's Deputy Rick Goodwin interviewed Austin apparently regarding an alleged rape of a nine-year-old child with whose family Austin had been living. Austin was living in a hotel and did not have a permanent address. But he told Goodwin that Eric Valley was his attorney; he gave Goodwin Valley's business card, which contained Valley's address and telephone number; and he said that Valley would know of his future whereabouts.

On June 26, 2000, the State filed an information charging Austin with first degree rape of a child. At the same time, it obtained a warrant for Austin's arrest and it mailed notice

[1] *State v. Striker*, 87 Wn.2d 870, 557 P.2d 847 (1976).

of the filing of the information to Austin at what the parties concede was an incorrect address. The notice was returned with the notation, "Moved, no forwarding address." Report of Proceedings (July 9, 2001) at 6. The State did not call Valley to ask about Austin's address or take any other steps to locate Austin.

Thirteen months later, on July 6, 2001, the Pacific County Sheriff's Office arrested Austin on the warrant. At his arraignment, Austin moved to dismiss the charge for violation of his speedy trial rights. The trial court concluded that "[t]he State did not fail to use due diligence in locating [Austin] or good faith in attempting to locate [him]." Supplemental Clerk's Papers (SCP) at 3.

We granted Austin discretionary review.

## DISCUSSION

Austin claims that the 13 month delay between the time the State filed its information and his arraignment violated his right to a speedy trial. The State, beyond noting the transient nature of Austin's lifestyle, makes no argument that Austin's fault or connivance caused the delay. Nonetheless, it contends that under the circumstances, it acted in good faith and with due diligence in attempting to bring Austin before the court for arraignment.

The speedy trial rule, CrR 3.3, requires the court to arraign out-of-custody criminal defendants no later than 14 days after a first appearance in court and bring them to trial no more than 90 days later. CrR 3.3(c)(1); *State v. Greenwood*, 120 Wn.2d 585, 589, 845 P.2d 971 (1993); *State v. Jones*, 79 Wn. App. 7, 10, 901 P.2d 1057 (1995). Although this speedy trial rule does not address the effect of an unnecessary delay between the filing of the information and the arraignment, the Supreme Court has determined that the rule, in conjunction with constitutional guaranties, requires a timely arraignment. *Greenwood*, 120 Wn.2d at 589-90; *State v. Huffmeyer*, 102 Wn. App. 121, 124, 5 P.3d 1289 (2000), *aff'd*, 145 Wn.2d 52 (2001).

Where the defendant is amenable to process and there is a long and unnecessary delay between charging and arraignment, the *Striker* rule applies and the court sets a constructive arraignment date 14 days after the filing of the information, which starts the speedy trial period. *Greenwood*, 120 Wn.2d at 599; *State v. Striker*, 87 Wn.2d 870, 875, 557 P.2d 847 (1976). In that situation, the State must bring a defendant who is not detained in jail to trial within 104 days of the filing of the information. *Greenwood*, 120 Wn.2d at 599; *Huffmeyer*, 102 Wn. App. at 124. Failure to comply requires dismissal with prejudice. *Huffmeyer*, 102 Wn. App. at 124; CrR 3.3(i).

*Striker* does not apply, however, if the State acted in good faith and with due diligence in attempting to bring the defendant before the court for arraignment. *Jones*, 79 Wn. App. at 10. Nor does it "apply to any period of delay resulting from any fault or connivance on the part of the defendant." *Greenwood*, 120 Wn.2d at 600. Whether the State acted in good faith and with due diligence turns on the facts of each case. *Greenwood*, 120 Wn.2d at 601.

The burden is on the State to prove due diligence for it knows what efforts it made during the relevant period. *State v. Roman*, 94 Wn. App. 211, 216, 972 P.2d 511 (1999). We review the trial court's finding that the State exercised due diligence for substantial evidence, which "is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding." *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999). Such evidence is absent here.

The purpose of the good faith and due diligence standard is to ensure that a defendant who is amenable to process is brought before the court in a timely manner to answer for the charge. *Greenwood*, 120 Wn.2d at 601. The *Greenwood* court acknowledged "that some periods of delay may be unavoidable." 120 Wn.2d at 601.

"In view of the difficulty of locating people in a modern urban society and the difficulty of proving that a defendant has been intentionally avoiding apprehension, [the lack of a good faith and due diligence standard] would place an impossible burden

on law enforcement and result in the dismissal of numerous cases."

*Greenwood*, 120 Wn.2d at 601 (quoting *State v. Miffitt*, 56 Wn. App. 786, 792, 785 P.2d 850 (1990)). Thus, the State does not have the burden of locating a defendant who has not provided accurate information of his whereabouts. *Greenwood*, 120 Wn.2d at 602.

But "[t]he overall purpose of the due diligence standard developed by the *Greenwood* line of cases is to ensure that the State takes *those steps reasonably calculated* to provide timely notice of pending charges to a defendant." *State v. Vailencour*, 81 Wn. App. 372, 377, 914 P.2d 767 (1996) (emphasis added). Thus, if the State has information that may lead to the defendant's whereabouts, to show due diligence it must take reasonable steps to follow up on that information or show that doing so would be unreasonably burdensome. *See State v. Hunnel*, 52 Wn. App. 380, 386, 760 P.2d 947 (1988) ("When the State sits idly by and does nothing with the information available to it, it cannot claim that it made a good faith effort to locate the defendant."); *see also Jones*, 79 Wn. App. at 13 (The State did not act with due diligence because it "failed to diligently act upon the information it had regarding [the defendant's] where-abouts."); *State v. Bazan*, 79 Wn. App. 723, 730, 904 P.2d 1167 (1995) (In determining whether the State acted with due diligence, "the court considers relevant factors, includ-ing whether the defendant was aware of the pending charge and the amount and nature of the information known or readily available to the State."); *City of Seattle v. Henderson*, 67 Wn. App. 369, 376, 841 P.2d 761 (1992) (Failure of warrant office to take any action on information received from informant about defendant's whereabouts was not lack of due diligence because "[t]o require that the warrant office act promptly on every 'tip' received would be unrealistic and unduly burdensome.").

Here, Goodwin interviewed Austin in February 2000, at the hotel where Austin was staying. According to the trial court's finding of fact 3:

At the conclusion of the interview the defendant advised the deputy that he was represented by Mr. Eric S. Valley and gave the deputy Mr. Valley's name and phone number. The defendant indicated that Mr. Valley would know where he could be located.

SCP at 2. And the trial court further found in finding of fact 8: "No evidence was presented describing the State's efforts to arrest Mr. Austin, either through Mr. Valley or otherwise." SCP at 3. Further, the State has failed to show or to even argue how making a single telephone call to Valley's phone number, which the defendant provided and which the officer attached to the incident report, would be an unreasonable burden.

■ Nor does the dissent suggest that the State exercised due diligence; it merely argues that the State did not need to do so because when the State filed the information, it also obtained a warrant for Austin's arrest. But contrary to the dissent's assertion, there is no authority allowing the State to circumvent its good faith/due diligence obligation and to independently extend the start of the speedy trial period merely by obtaining an arrest warrant at the time it files the information. Clearly if this were the law, the *Striker* rule would be meaningless.

Moreover, the issuance of a warrant does not alone show due diligence if the State has information that it could reasonably use to facilitate bringing the defendant before the court. *See State v. Peterson*, 90 Wn.2d 423, 427, 585 P.2d 66 (1978) (In determining whether the State acted with due diligence for purposes of applying the *Striker* rule, "[t]he presence or absence of a warrant is likewise without significance as the prosecutor has the choice of whether or not to secure the warrant."); *see also State v. Huffmeyer*, 145 Wn.2d 52, 55, 64, 32 P.3d 996 (2001) (the State failed to act with due diligence, even though it obtained a warrant for the defendant's arrest on the same day it filed the information, because when the warrant was returned to the court with a notation that the defendant was in custody in the King County jail, the State nonetheless took no additional

steps at that time to bring the defendant to trial in Kitsap County); *State v. Alexus*, 91 Wn.2d 492, 494-96, 588 P.2d 1171 (1979) (the State failed to act with due diligence, even though a warrant was issued by the superior court on the same day that the information was filed, because the warrant was accompanied by criminal warrant information forms indicating that the defendant was incarcerated in the Clark County jail, yet the record contained no evidence that the prosecutor served the warrant or otherwise attempted to notify the defendant of the pending charges).

■■ Further, the mailing of a notice of the filing of the information to an incorrect address did not show due diligence because when the mailing was returned, the State was on notice that Austin did not receive it. *See Jones*, 79 Wn. App. at 13 (Where State possessed defendant's correct address and a message telephone number, it failed to act diligently when it took no further steps to notify the defendant of the charge or to serve the warrant after mailed summons was returned.).

The facts here are distinguishable from those of Landey, one of the appellants in *Greenwood*. 120 Wn.2d at 596. Although the *Greenwood* court held that the State's failure to contact Landey's attorney was not sufficient to demonstrate a lack of due diligence, the State had made other efforts. Two different State officials had called Landey at the number he had provided to an investigating detective and a warrants officer had tried to locate him through the employment security office and the welfare office and by using a reverse directory. *Greenwood*, 120 Wn.2d at 596-97, 602.

By contrast, the *Greenwood* court did find the absence of due diligence with regard to another appellant, Weyland. 120 Wn.2d at 603-07. The State charged Weyland with escape, but it took no further action although it had information that Weyland had been arrested and was in the Washington State Penitentiary. *Greenwood*, 120 Wn.2d at 605. In Weyland's case, the State failed to offer *"any argument whatsoever* that it acted in good faith and with

due diligence in trying to bring Weyland before the court during any of this 125-day period." *Greenwood*, 120 Wn.2d at 605.

Here, beyond obtaining a warrant, the State has not shown that it made any efforts to bring Austin before the court after the mailed notice was returned, even though contacting Valley might have led to Austin's whereabouts. The State and the dissent both cite *State v. Perry*, 25 Wn. App. 621, 623, 612 P.2d 4 (1980), for the proposition that "the law of this state has not yet reached the point where the Prosecuting Attorney, or the law enforcement agencies, have to physically go out and search the countryside for defendants." But the *Perry* holding does not eliminate the State's minimal duty to make a single phone call to a contact person designated by the defendant for the express purpose of providing his current address.

Here, if the State had contacted Valley and Valley had either been uncooperative or unaware of Austin's whereabouts, the State would have had no further obligation. We do not suggest that it should have "search[ed] the countryside."

 Under these circumstances, the State has not met its burden of showing that it exercised due diligence.[2] But the State's failure to make reasonable efforts to follow up on available information will not support application of the *Striker* rule if the State shows that those efforts would have

---

[2] Contrary to the dissent's assertion, nothing in this opinion requires the State to warn a defendant about an arrest warrant; we merely require the State to make reasonable efforts to advise the defendant of the filing of criminal charges. And contrary to the dissent's suggestion, nothing in the record indicates that Austin asked to appear to answer the charge through Valley. Valley was merely a contact person.

Nor do we understand the dissent's statement that "According to the majority, the State must accept a transient suspect's representations at face value and send a summons to whomever the suspect demands before requesting that the court issue a warrant." Dissent at 330. Our opinion does not impose an obligation on the State to send a summons before issuing a warrant. We merely hold that under the facts here, the State's failure to make a telephone call to Valley, as a contact person, to request Austin's current address showed a lack of due diligence.

been futile. *See Vailencour*, 81 Wn. App. at 377.[3] In other words, because it is not unreasonable to fail to do a futile act, reversal is not required where the State's failure to act was harmless.

Here, the trial court took no evidence and made no finding as to whether the efforts to contact Austin through Valley would have been futile. Thus, we remand for the superior court to take evidence, enter findings, and make a proper disposition in accordance with those findings and this opinion.

ARMSTRONG, J., concurs.

QUINN-BRINTNALL, A.C.J. (dissenting) — The appellant, Leroy F. Austin, lived with the nine-year-old girl and her family but moved after the girl reported that Austin had sexually molested her. When the Pacific County sheriff's deputy interviewed Austin concerning the first degree rape of a child charges, Austin was staying at a hotel, was transient, and provided no residence address.

Today the majority imposes a new duty on the State: to warn a defendant that a warrant for his arrest has issued and thus provide him an opportunity to surrender or flee. If the State fails to forewarn of its intention to arrest, the majority holds, dismissal of felony child rape charges is mandated under CrR 3.3, a wholly court-created procedural rule. I believe that the majority opinion extends law and I respectfully dissent.

At an interview with the sheriff's deputy on February 3, 2000, Austin did not have, nor did he later make available to the Pacific County authorities, a permanent address.

---

[3] In *State v. Vailencour*, the State failed to mail the arraignment notice to an address given by the defendant's sister. 81 Wn. App. 372, 374, 914 P.2d 767 (1996). The question there was whether this lack of due diligence was harmless where it was later shown that the address was incorrect. The court held that "[w]here it is conclusively shown that a particular failure by the State did not in fact deprive the defendant of such notice, we hold that reversal is not required." *Vailencour*, 81 Wn. App. at 377. But, the State must demonstrate that a particular omission by it has had no practical consequence and that no prejudice resulted to the defendant. *Vailencour*, 81 Wn. App. at 377.

Austin did tell the sheriff's deputy that he was represented by an attorney, Eric Valley, and gave the deputy Valley's business phone number in an adjoining county. Valley did not contact the sheriff's office to confirm that he was representing Austin, nor did he provide a guaranty that he would surrender Austin in the event charges were filed.[4] Thus, Austin's claim that Valley was representing him on February 3, 2000, was not confirmed.

Austin demanded that police contact him only through a particular person, an attorney. But our Supreme Court has ruled that a criminal defendant may not appear through counsel. *See State v. Hackett*, 122 Wn.2d 165, 857 P.2d 1026 (1993) (defense attorney's notice of appearance and demand that the State send all correspondence through the attorney insufficient to demonstrate defendant's presence before the court or trigger the running of the timely trial limits under CrR 3.3(d)(2)). Here, as in *Hackett*, neither the court nor the State had any information about Austin's whereabouts or any assurance that he would appear.

According to the majority, the State must accept a transient suspect's representations at face value and send a summons to whomever the suspect demands before requesting that the court issue a warrant. I do not believe that court rules applicable to this case, current case law, or our state and federal constitutions require law enforcement to make such an unreasonable and potentially dangerous leap of faith.

CrR 3.3 is a rule enacted by the Supreme Court under its procedural authority to regulate the flow of cases through the superior court. *See* RCW 2.04.200 (court rules supersede statutes). In my view the superior court lacks both the power and the authority to apply these procedural rules until both the defendant and the charge are before it. *State v. Galbreath*, 109 Wn. App. 664, 668, 37 P.3d 315 (2002). Moreover, neither CrR 3.3 nor the cases interpreting it preclude a court from issuing a felony arrest warrant

---

[4] Valley did not file a notice of appearance in the case until July 20, 2001, 14 days after Austin was arrested on the warrant.

until the State has proved that a summons is futile.[5] Nothing in the cases relied on by the majority requires that a person charged with a felony be given notice and an opportunity to flee before service of an arrest warrant. Finally, *State v. Perry*, 25 Wn. App. 621, 623, 612 P.2d 4 (1980), which holds that the State has no duty to search out a defendant for whom an arrest warrant has issued,[6] is still good law and neither common sense nor case law requires that we abandon it.

Here, under the law existing at the time, the trial court properly exercised its discretion to issue an arrest warrant

---

[5] But the recently amended CrR 2.2(a)(3) (effective September 1, 2003) may do so:

(3) *Ascertaining Defendant's Current Address*.

(i) Search for Address. The court shall not issue a warrant unless it determines that the complainant has attempted to ascertain the defendant's current address by searching the following: (A) the District Court Information System database (DISCIS), (B) the driver's license and identicard database maintained by the Department of Licenses, and (C) the database maintained by the Department of Corrections listing persons incarcerated and under supervision. The court in its discretion may require that other databases be searched.

(ii) Exemptions from Address Search. The search required by subdivision (i) shall not be required if (A) the defendant has already appeared in court after filing of the same case, (B) the defendant is known to be in custody, or (C) the defendant's name is unknown.

(iii) Effect of Erroneous Issuance. If a warrant is erroneously issued in violation of this subsection (a)(3), that error shall not affect the validity of the warrant.

Whatever the wisdom of this new rule, it did not take effect until September 1, 2003, and does not control our decision in this case. Nor is it clear how the address search requirement of CrR 2.2(a)(3) relates to the court's ability to issue a warrant when it has reasonable cause to believe that the defendant will not appear in response to a summons issued in a misdemeanor or gross misdemeanor case. *See* CrR 2.2(b)(2):

*When summons must issue.* If the indictment or information charges only the commission of a misdemeanor or a gross misdemeanor, the court shall direct the clerk to issue a summons instead of a warrant unless it finds reasonable cause to believe that the defendant will not appear in response to a summons, or that arrest is necessary to prevent bodily harm to the accused or another, in which case it may issue a warrant.

[6] In *Perry*, we held that the law of this state "has not yet reached the point where the Prosecuting Attorney, or the law enforcement agencies, have to physically go out and search the countryside for defendants who have either given the wrong address to the Court or who moved from that address without leaving forwarding information." 25 Wn. App. at 623.

for a transient defendant charged with first degree child rape. The notice requirements applicable to a summons to appear, expressed in *State v. Striker*, 87 Wn.2d 870, 557 P.2d 847 (1976), and *State v. Greenwood*, 120 Wn.2d 585, 845 P.2d 971 (1993), are inapplicable when the court has issued a valid arrest warrant. Because the superior court lacked the authority to proceed to trial until it had both Austin and the charge before it, former CrR 3.3 (1995) was not violated. Thus I dissent.