[No. 22662-2-I. Division One. February 5, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. RONALD F. MIFFITT, *Appellant.*

---

*Jesse W. Barton* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

FORREST, J.—Ronald Miffitt appeals from his conviction of attempted burglary in the second degree, contending that his right to a speedy trial under CrR 3.3 was violated. We affirm.

On June 3, 1987, Ronald Miffitt was arrested for attempting to burgle an American Legion hall. He was released without conditions after a district court appearance. An information charging him with attempted burglary

in the second degree was filed on December 15, 1987. A summons was sent by certified mail to the Seattle address that Miffitt provided during the district court appearance.

When Miffitt failed to appear for his arraignment on December 29, 1987, the date noted in the summons, a bench warrant was authorized. The summons was returned unclaimed on January 11, 1988. Miffitt was unable to claim the summons because he was in the King County Jail while being tried for burglary in the second degree in a different case.

A bench warrant was not issued and filed until January 25, 1988. The warrant was entered on the State Patrol computer system the next day. Miffitt continued to be confined to the King County Jail until February 15, when he was transferred to the state reformatory.

On March 10, the FBI informed the State Patrol that Miffitt was at the reformatory. The State Patrol notified the Snohomish County Sheriff's Office on March 15. A temporary removal order was obtained to transport Miffitt to Snohomish County for arraignment. After one arraignment date was stricken due to Miffitt's hospitalization, Miffitt was arraigned on April 5, 1988. Miffitt's counsel objected to the timeliness of the arraignment, but the court held that Miffitt had been unavailable and that the State had exercised due diligence in bringing him before the court. A trial date of June 24, 1988, was set. After Miffitt renewed his objection to the timeliness of the arraignment and trial, he submitted to a trial on stipulated facts and was convicted. He appeals.

Miffitt argues that the 101-day delay between the filing date of the information, December 15, 1987, and his arraignment date of March 25, 1988 (which was continued to April 5 on Miffitt's motion), invokes the *State v. Striker,* 87 Wn.2d 870, 557 P.2d 847 (1976) rule[1] and starts the 90-day speedy trial clock running from the filing date of the

---

[1] "[W]here, contrary to the expectation expressed in the rules, a delay has occurred between the filing of the information and the bringing of the accused

information. He contends that he was amenable to process[2] throughout this period because he was in Washington and confined in either the King County Jail or the state reformatory. He further contends that the delay was not his fault, that he did not connive to avoid prosecution, and that it would not have been difficult for the State to locate him.

Miffitt urges this court to follow *State v. Baxter,*[3] in concluding that periods of the defendant's unavailability are no longer excluded from the computation of the time for trial.[4] He further argues that the court should reject the case of *State v. Allen.*[5] He contends that the *Allen* conclusion—that an exclusion for periods of a defendant's unavailability exists even after the unavailability exclusion was deleted from CrR 3.3—was dictum and should be disregarded.

The State responds that the *Striker* rule was developed because the version of CrR 3.3 then in effect had no provision for dealing with an untimely arraignment. Accordingly, it argues that the Supreme Court's adoption of CrR 3.3(c)(1),[6] which fixes the date of arraignment for a defendant not in custody or under conditions of release, makes

---

before the court, CrR 3.3 must be deemed to operate from the time the information is filed." *State v. Striker,* 87 Wn.2d 870, 875, 557 P.2d 847 (1976). *See also State v. Carpenter,* 94 Wn.2d 690, 693–94, 619 P.2d 697 (1980).

[2]"Amenable to process" has been defined as "whether a person is liable or subject to the law." *State v. Carpenter,* 94 Wn.2d 690, 693, 619 P.2d 697 (1980).

[3]45 Wn. App. 533, 540, 726 P.2d 1247 (1986).

[4]*Cf.* former CrR 3.3(h) (1978) with the current CrR 3.3(d) and (g).

[5]36 Wn. App. 582, 585, 676 P.2d 501 (1983). Miffitt also urges the court to reject the reasoning in *State v. Holien,* 47 Wn. App. 124, 130, 734 P.2d 508 (1987); and *State v. Nelson,* 47 Wn. App. 579, 585, 736 P.2d 686, *review denied,* 108 Wn.2d 1024 (1987). However, both of these cases hold that the defendant was not unavailable and decline to rule on whether the unavailability exclusion still exists.

[6]The relevant part of CrR 3.3(c)(1) reads: "If the defendant is not detained in jail or subjected to conditions of release, the defendant shall be arraigned not

periods of unavailability immaterial. It contends that for such defendants the only requirement is that they be arraigned within 14 days of the first appearance in court following the filing of the information and, in effect, that there can be no untimely arraignment for such defendants resulting from delay between the filing of the information and the first superior court appearance.

The State alternatively responds that *Baxter* has been overruled in *State v. Hanson.*[7] It urges that the court apply *Allen, Hanson,* and *State v. Pacheco,*[8] and conclude that the period of Miffitt's unavailability should be excluded from the computation of his time for arraignment and trial. Miffitt argues that *Baxter* has not been overruled because on the same date that *Hanson* was filed, another decision adhered to the *Baxter* holding, although it also determined that the State did not exercise due diligence.[9]

The present version of CrR 3.3, time for trial, divides the traditional "speedy trial" requirements into two distinct aspects: (1) time for trial and (2) time for arraignment. Calculations for the trial date are based on the date of arraignment. With the defendant before him for arraignment, giving a fixed starting point for those calculations, the trial judge is in a position to discharge his speedy trial responsibilities. CrR 3.3(a). Certain exclusions in calculating trial and arraignment dates are provided under CrR 3.3(g), but "unavailability" has been conspicuously removed.[10]

The time for arraignment is specific for a defendant in custody or under conditions of release—14 days after the

later than 14 days after that appearance in superior court which next follows the filing of the information or indictment."

[7]52 Wn. App. 368, 374, 760 P.2d 941, *review denied,* 111 Wn.2d 1030 (1988).

[8]107 Wn.2d 59, 65, 726 P.2d 981 (1986).

[9]*State v. Hunnel,* 52 Wn. App. 380, 385, 760 P.2d 947 (1988).

[10]*See State v. Baxter,* 45 Wn. App. at 538–40.

filing of the information.[11] Once the defendant is "in the system", there is no reason the State cannot bring him before the court in a timely manner for arraignment. The sanction for failing to do so is the creation of a constructive arraignment date, the date by which he should have been arraigned.[12] The trial date is then calculated from either the actual or constructive arraignment date.[13] This gives certainty in calculation and implements the purposes of the rule.

The only remaining uncertainty as to the date of arraignment arises when the defendant is "not in the system" either because he has never been arrested or because he has been released following arrest without conditions. This is the case before us. Under such circumstances, the arraignment date is fixed by the rule as not later than 14 days after "that appearance in superior court which next follows the filing of the information or indictment." CrR 3.3(c)(1). This appearance is not under the control of the trial court. It depends on the efforts of the prosecutor and law enforcement officials.

Applying the rule literally, Miffitt's arraignment date was within the prescribed time as it occurred within 10 days after "that appearance in superior court which next follow[ed] the filing of the information . . .." Such literal application would mean the State has no duty to bring a charged but unarrested defendant before the court, even when his whereabouts are known. Such a holding would be flatly contrary to *Striker*, which has been repeatedly cited with approval, and contrary to the great emphasis placed on prompt resolution of criminal cases. Such a result is unacceptable. However, Miffitt's position that *Baxter* does not permit the consideration of the defendant's unavailability would result in a rule that once an information is

---

[11]CrR 3.3(c)(1).

[12]CrR 3.3(c)(4).

[13]CrR 3.3(c)(1).

filed, it *must* be dismissed with prejudice at the end of 104 days if law enforcement has not brought the defendant before the court no matter how vigorous their efforts (as long as he has been amenable to process and has not connived to avoid apprehension). In view of the difficulty of locating people in a modern urban society and the difficulty of proving that a defendant has been intentionally avoiding apprehension, such a rule would place an impossible burden on law enforcement and result in the dismissal of numerous cases. That result is equally unacceptable.

The question of unavailability was not at issue in *Striker* because the defendants were in fact readily available; the prosecutor merely failed to take any action to bring them before the court. Nor was there a specific rule for treating untimely arraignments when calculating the time for trial. After *Striker*, CrR 3.3(c)(1) was amended to calculate the time for trial from the arraignment date. CrR 3.3(c)(4) was added to deal with untimely arraignments *once the defendant had been brought before the court*. What is conspicuously absent from CrR 3.3 is a provision for when defendants, either not arrested or released without conditions, must be brought before the court. We believe that this absence can be filled by shifting the focus of the analysis of the State's actions in bringing such defendants before the court from CrR 3.3 to CrR 4.1, the rules for arraignment.

CrR 4.1(a) requires that: "[p]romptly after the indictment or information has been filed, the defendant shall be arraigned thereon in open court." We hold that the State has a duty to bring a charged defendant, who has either not been arrested or who has been released without conditions, before the court promptly for arraignment to comply with the rule.[14] We do not demand the impossible.

---

[14]"Prompt arraignment is required after the filing of the indictment or information. CrR 4.1. In short, the rules do not authorize a period of delay between the filing of an indictment and the arrest or summons of the defendant, where he is amenable to process." *Striker,* 87 Wn.2d at 871.

The State's duty is fulfilled if they use "good faith and due diligence" in attempting to bring the defendant before the court.[15] Under various versions of CrR 3.3, a considerable body of case law has developed on what constitutes "good faith and due diligence."[16] When a defendant claiming undue delay in being brought before the court establishes a lack of good faith and due diligence, the court can appropriately impose the *Striker* sanction of setting a constructive arraignment date and commencing the speedy trial clock from that date. Such date would be the day on which the State should have secured the defendant's appearance before the court in the exercise of good faith and due diligence. So long as the State exercises "good faith and due diligence", the case will not be dismissed for untimely arraignment no matter how long the delay may be.

The final resolution of the application of CrR 3.3 to defendants who have not made an appearance in superior court is the responsibility of our Supreme Court. However, we believe that our interpretation of CrR 4.1 and CrR 3.3 as they apply to charged defendants who are "not in the system" by being in custody or released on conditions, is fair to the State, fair to the defendant and fully implements the public interest in the prosecution of criminal offenses and the prompt disposition of criminal charges. This interpretation fills the present gap in the rule and clarifies the State's responsibility to bring charged defendants before the court.

DID THE STATE EXERCISE GOOD FAITH
AND DUE DILIGENCE?

■■ The determination of good faith and due diligence will turn on the facts of each individual case. Here

---

[15]The standard of "good faith and due diligence" was established in *State v. Peterson*, 90 Wn.2d 423, 428, 585 P.2d 66 (1978), the measure of compliance with the former "unavailability" rule of CrR 3.3. We believe it is equally applicable to the speedy arraignment obligation of CrR 4.1(a).

[16]See footnotes 17–19.

the State acted on the information it had. A summons was mailed to defendant's last known address.[17] There is no obligation to check with every agency in the state to determine whether the defendant is somewhere in jail.[18] The knowledge of the Department of Corrections as to a defendant's whereabouts is not imputed to the county prosecutor.[19] Other than by instituting some kind of computer search as to whether Miffitt was somewhere in custody, there is no indication that the State had more information upon which it could have acted. The court did not err in finding that the State had exercised "good faith and due diligence." Accordingly, Miffitt was timely arraigned and timely brought to trial.

Affirmed.

GROSSE, A.C.J., and WEBSTER, J., concur.

Reconsideration denied February 21, 1990.

Review denied at 114 Wn.2d 1026 (1990).

---

[17]*See State v. Perry*, 25 Wn. App. 621, 623–24, 612 P.2d 4 (1980).

[18]*State v. Bledsoe*, 31 Wn. App. 460, 464, 643 P.2d 454, *review denied*, 97 Wn.2d 1026 (1982).

[19]*State v. Pacheco*, 107 Wn.2d 59, 726 P.2d 981 (1986); *State v. Allen*, 36 Wn. App. 582, 585, 676 P.2d 501 (1983); *State v. Johnson*, 56 Wn. App. 333, 783 P.2d 623 (1989). *But see State v. Day*, 46 Wn. App. 882, 894, 734 P.2d 491 (1987).