[No. 26707-8-I.    Division One.    September 8, 1992.]

THE CITY OF SEATTLE, *Petitioner,* v. JEFFREY S. HENDERSON, *Respondent.*

*Mark H. Sidran, City Attorney,* and *Myron L. Cornelius, Assistant,* for petitioner.

*Jeffrey E. Ellis* of *The Defender Association,* for respondent.

KENNEDY, J. — The City of Seattle sought discretionary review of the Superior Court's order on a RALJ appeal affirming the Municipal Court's dismissal of the charge against respondent Jeffrey Henderson for violation of Henderson's speedy trial rights. We granted discretionary review and we now reverse and remand for trial.

I

On August 13, 1988, respondent Jeffrey Henderson was charged with driving while license suspended, in violation of Seattle Municipal Code 11.56.320. Henderson signed the citation, in which he promised to appear as directed, and was released. Henderson's arraignment was set for September 2, 1988. On August 26, 1988, Henderson called the Seattle Municipal Court to request a continuance of his arraignment date. The court continued his arraignment date to September 16, 1988.

When Henderson failed to appear at his arraignment on September 16, the court issued a bench warrant, dated September 19, 1988, with bail in the amount of $500. Henderson then called the court to explain that he had missed his arraignment because of illness. At this time, Henderson was

advised that a bench warrant had been issued for his arrest and that to quash the warrant, he should come to court on a Tuesday or Thursday morning and request to be heard on that day. Henderson, however, did nothing.

The Municipal Court found that notice of the bench warrant was sent out on September 19, 1988, to the address noted on the warrant and on the citation.[1] Another copy of the notice was sent to Henderson on January 24, 1989. This notice was labeled "Final Notice" and warned that Henderson must call the warrant office or face arrest at home or work. Henderson acknowledged that he received this "final notice" and that he did nothing.

A notation on the warrant indicates that on March 30, 1989, an informant called and advised the warrant office that Henderson actually lived at 9051 Dibble Avenue Northwest, in a house behind the residence address he had given.[2] Another notation dated April 4, 1989, reflected that Henderson was to be in room W291 of the King County courthouse the following morning at 9:30 a.m. An undated notation reflected that Henderson's work information was still valid.

On September 15, 1989, Henderson was arrested pursuant to the warrant. Henderson appeared on October 4, 1989, and entered a plea of not guilty.

On November 13, 1989, Henderson moved to dismiss the charge for violation of his right to a speedy trial pursuant to CrRLJ 3.3. On January 18, 1990, a hearing was held to determine the speedy trial issue. At the close of the hearing, the Municipal Court dismissed the case for violation of CrRLJ 3.3.

The City appealed to the King County Superior Court. On July 16, 1990, the Superior Court affirmed the trial court, finding that "the trial court correctly applied the

---

[1]When he was issued the citation, Henderson gave the officer his parents' address, 835 Northwest 92nd. At his pretrial hearing, Henderson testified that he gave this address because it is his mailing address and he receives all of his mail at this address. Henderson actually lives at 9051 Dibble Avenue Northwest, which is apparently on the same property as his parents' residence.

[2]There is nothing in the record indicating the identity of the informant.

[*State v.*] *Striker*[, 87 Wn.2d 870, 557 P.2d 847 (1976)] rule in this case because there was an excessive delay between filing charges and arraignment during which the defendant was available and amenable to process."[3] The court found that Henderson was available and amenable to process as of April 4, 1989, the date the warrant office learned of his pending appearance in the King County courthouse. The court concluded that the warrant office failed to exercise good faith and due diligence to secure the presence of Henderson between April 4, 1989, and September 15, 1989, thus violating Henderson's speedy trial rights.

This court granted discretionary review to determine whether the courts below correctly applied the rule set forth in *State v. Striker*, 87 Wn.2d 870, 557 P.2d 847 (1976), in dismissing the charge against Henderson.[4]

---

[3]In the oral ruling, the Superior Court stated: "There is no information whatsoever that the court — Excuse me, that the Warrant Office — took any [action] between April 4, 1989, and the day when the warrant was actually served which was on September [15] of '89. It would have been futile to give notice at the time of arraignment that the trial date could not be had within 105 days of the incident; the Court does find that there is a violation of [*State v.*] *Str[i]ker* [87 Wn.2d 870, 557 P.2d 847 (1976).] The Court will dismiss it. "Now, a couple of things, I do not find in good faith that Mr. Henderson gave the appropriate address. Counsel's argument that he gave a mailing address is not the same as giving an address where the defendant can physically be located. That was not provided by the defendant and the Court does feel that defendant did, in the parliaments of *Str[i]ker* cases, part of the delay was the fault or the connivance, because of the connivance of the defendant giving a wrong address. The Court does find, however, that from April 4th to the date that he was served with this matter, September 15th, some five months and eleven days, the defendant was amenable to process and the Court knew of his — [t]he Warrant Office knew of his location and where he worked and could have picked him up. Although I do not agree with the rulings in *Str[i]ker*, the Court is bound by them, or the reasoning instructed, the Court is bound by them. The Court will dismiss the matter. So, even though there was diligence on the part of the Warrant Office prior to April 4, 1989, it doesn't cover that period subsequent to that."

[4]In *Striker*, the State filed an information, but no notice was given to the defendants. Although both defendants were amenable to process, neither a warrant nor a summons was issued to bring the defendants before the court. The court held that where an unduly long delay occurs between the filing of an information and the defendant's first appearance in court, the time for trial pursuant to CrR 3.3 is deemed to operate from the time of the filing of the charging document, not from the time of arraignment. 87 Wn.2d at 875.

## II

CrRLJ 3.3(c)(1)[5] requires that an accused not detained in jail must be brought to trial within 90 days of arraignment. The 90-day speedy trial period would have started on September 16, 1988, the date of Henderson's scheduled arraignment, had he appeared. For purposes of this appeal, it is undisputed that Henderson was unavailable and not amenable to process until April 4, 1989. The issue on appeal is whether Henderson became available and amenable to process as of April 4, 1989, by which date the warrant office had learned of Henderson's actual residence address and that he allegedly was to appear in the King County courthouse the next day, or whether Henderson became available only upon his arrest on September 15, 1989.

■ The rule set forth in *Striker* provides that when an "unduly long" delay has occurred between the filing of an information and the arraignment, and the accused is amenable to process, the speedy trial period begins to operate from the time the information is filed. *Striker*, 87 Wn.2d at 875. Here, almost 14 months elapsed between the filing of the citation and Henderson's first appearance in court, and 6 months elapsed between the dates the warrant office learned of Henderson's actual address, and of his impending appearance in the courthouse, and his first appearance in court. Thus, we must determine whether the delay between the filing of the citation and the arraignment was "unduly long".

---

[5] CrRLJ 3.3(c)(1) provides in full:

"**(c) Time for Arraignment and Trial.**

"(1) *Cases Filed in Court.* If the defendant is detained in jail, or subject to conditions of release, the defendant shall be arraigned not later than 15 days after the date the complaint is filed in court. If the defendant is not detained in jail or subjected to conditions of release, the defendant shall be arraigned not later than 15 days after that appearance in court which next follows the filing of the complaint or citation and notice. A defendant not released from jail pending trial shall be brought to trial not later than 60 days after the date of arraignment. A defendant released from jail whether or not subjected to conditions of release pending trial shall be brought to trial not later than 90 days after the date of arraignment."

In *State v. Carpenter*, 94 Wn.2d 690, 693, 619 P.2d 697 (1980), the court, in interpreting former CrR 3.3 and *Striker*, set forth questions to be answered to determine the applicable date from which to calculate the period during which a defendant must be brought to trial.

First, "[w]as defendant amenable to process?" *Carpenter*, 94 Wn.2d at 693. Black's Law Dictionary 74 (5th ed. 1979) defines "amenable" as "[s]ubject to answer to the law; accountable; responsible; liable to punishment." "Process" is defined as:

> any means used by court to acquire or exercise its jurisdiction over a person or over specific property. . . .
> . . . The word "process," however, as now commonly understood, refers to a summons, or, summons and complaint, and, less commonly, to a writ.

Black's Law Dictionary 1084-85; *see also Carpenter*, 94 Wn.2d at 693 (defining "amenable to process" as "whether a person is liable or subject to the law") (citing *Oxford Dictionary* (1888) and *Webster's Third New International Dictionary* (1961)). Here, Henderson was clearly "amenable to process", as above defined, during the period preceding his failure to appear at his arraignment on September 16, 1988. Henderson signed the citation promising in writing to appear at his arraignment.[6]

Second, "[w]as the delay between the filing of the information and the arraignment . . . sufficient to come under *Striker*?" *Carpenter*, 94 Wn.2d at 694. Here, almost 14 months elapsed between the filing of the citation and Henderson's first appearance in court; thus, the delay is sufficient to fall under *Striker*. *See Carpenter*, 94 Wn.2d at 694 (holding 45 days sufficient to come under *Striker*).

■ Third, "[w]as defendant at fault in causing the delay" or "[d]id defendant 'connive' to cause the delay?" *Carpenter*,

---

[6]We note that "amenable" is also defined as "readily brought to yield or submit", with synonyms of "obedient" and "responsible". *Webster's Third New International Dictionary* 68 (1976). Henderson's failure to appear and respond to the verbal and written notices he received after he failed to keep his promise to appear indicates both resistance and irresponsibility on his part.

94 Wn.2d at 694; *see also State v. Landey,* 57 Wn. App. 527, 529, 789 P.2d 314 (1990); *State v. Hunnel,* 52 Wn. App. 380, 384-85, 760 P.2d 947 (1988); *State v. Nelson,* 47 Wn. App. 579, 583, 736 P.2d 686, *review denied,* 108 Wn.2d 1024 (1987). Delays during which a defendant is unavailable due to the defendant's own fault or connivance are excluded from the *Striker* rule. *Landey,* 57 Wn. App. at 529, 530; *Nelson,* 47 Wn. App. at 584. However, "[u]navailability can be shown *only* if the prosecution demonstrates *good faith and diligent efforts* to obtain the availability of the defendant." (Italics ours.) *State v. Wirth,* 39 Wn. App. 550, 553, 694 P.2d 1113, *review denied,* 103 Wn.2d 1027 (1985). Where no effort is made, dismissal is required. *State v. Peterson,* 90 Wn.2d 423, 428, 585 P.2d 66 (1978). Where the prosecution makes some effort, however, the question is closer. *Wirth,* 39 Wn. App. at 554. The determination of whether the prosecution exercised good faith and due diligence turns on the facts of each individual case. *State v. Miffitt,* 56 Wn. App. 786, 793, 785 P.2d 850, *review denied,* 114 Wn.2d 1026 (1990).

In *Wirth,* the court set forth several factors for consideration in making this determination: (1) "the accused's awareness of the pending charges," (2) "the accused's fault in causing the delay, including 'connivance,' " and (3) "the amount and nature of information known to authorities." 39 Wn. App. at 554 (citing *State v. Carpenter, supra*).

The City claims that the delay in bringing Henderson to trial was entirely Henderson's fault. Henderson claims that he became available and amenable to process on April 4, 1989, the date the warrant office learned that he was to be in Room W291 of the King County courthouse at 9:30 a.m. the following morning. Henderson argues that because the City made no effort to arrest him between April 4 and September 15, 1989, dismissal is required under *Striker.* Henderson also argues that the City's alleged lack of diligence cures his own connivance and fault. We disagree.

Here, the trial court determined, and it has not been challenged on appeal, that Henderson was aware of the

pending charge and of his September 16, 1988, arraignment date. Second, Henderson clearly knew a warrant had been issued for his arrest and he clearly was at fault for failing to come into court to seek to have the warrant quashed, after having missed the new arraignment date which he himself had requested. At the pretrial hearing, Henderson acknowledged that he received verbal and written notices of the warrant, and of how to proceed, and that he did nothing. When the warrant office received notice of Henderson's possible whereabouts in late March and early April of 1989, almost 7 months had passed from the time the initial warrant was issued. This passage of time is entirely attributable to Henderson's failure to respond.[7]

■ It was the failure of the warrant office to take any action on the information received from the informant that troubled the trial court. However, this inaction alone does not necessitate a finding of lack of good faith and due diligence. To require that the warrant office act promptly on every "tip" received would be unrealistic and unduly burdensome. The enormous case loads in our heavily populated counties and the questionable reliability of many "tips", especially those received from unidentified informants, would make this an unrealistic requirement.

Here, the warrant office acted reasonably; two notices were mailed to Henderson's last known address, the address

---

[7]*Cf. Nelson*, 47 Wn. App. at 583-84. In *Nelson*, the defendant was arrested at a friend's house. When he was booked, he gave the authorities his correct address. On his release order, however, the police listed the address where he was arrested. The prosecutor mailed notice and summons of the arraignment to the address where he was arrested. The summons was returned as undeliverable and the defendant failed to appear at his arraignment. This court found that any delay was not attributable to the defendant's fault or connivance because he was not aware that the police wrote down the wrong address. 47 Wn. App. at 583-84.

Similarly in *Hunnel*, the court found that the delay in bringing the defendant to trial was not due to the defendant's fault because the police failed to use the address the defendant had provided. 52 Wn. App. at 385.

provided by Henderson,[8] and under the circumstances of this case we find no breach of a duty owed to Henderson by the State for the failure of the warrant office to follow up on tips from an unidentified informant of unknown reliability.

■ We hold that the courts below misinterpreted CrRLJ 3.3 and extended *Striker* beyond its facts, spirit and underlying principle. Unlike the defendant in *Striker*, Henderson had notice of the charges and ignored them. CrRLJ 3.3 is not intended to reward a defendant who contrives to evade justice by failing to appear for arraignment after having promised in writing to do so and who, after having admittedly received and ignored verbal notice of an outstanding bench warrant and notice of how to proceed, fails to follow instructions on how to proceed to quash the warrant; and who then deliberately ignores a final written notice, admittedly received, that states he will be subject to arrest unless contact is made. Although a defendant is under no obligation to bring himself to trial, *Carpenter*, 94 Wn.2d at 694, Henderson had an obligation to appear for his arraignment after having promised in writing to do so and he deliberately failed to respond to verbal and written notices that an arrest warrant had been issued. We hold that the period of delay between the filing of the citation and Henderson's arrest was justifiable as he was deliberately unavailable

---

[8]In *Landey*, this court, in rejecting the defendant's argument that the State failed to exercise due diligence, reasoned:

"We are unpersuaded by Landey's assertions that had the State used other methods, it would have found him. The State had no duty to obtain in-hand service of Landey. In [*State v.*] *Perry*, [25 Wn. App. 621, 612 P.2d 4 (1980)], we rejected the assertion that the State should have contacted the defense attorney for information as to the defendant's whereabouts. With hindsight, it is always possible to find some method by which the State would have located the defendant. With enormous case loads facing our large counties, prosecutors' offices cannot be expected to pursue every possible avenue to obtain the defendant's presence at an arraignment. Dismissal is a severe remedy, and therefore, requires that the *Striker* rule be applied with caution. We decline to apply the *Striker* rule under these facts." 57 Wn. App. at 532.

after good faith and reasonable efforts were made to locate him.[9] Accordingly, we reverse and remand for trial.

SCHOLFIELD and BAKER, JJ., concur.

Reconsideration denied October 9, 1992.

---

[9]*Cf. State v. Perry,* 25 Wn. App. 621, 612 P.2d 4 (1980). In *Perry,* the State mailed summons to the address defendant gave at the time of his arrest. When the summons was returned as undeliverable and the defendant failed to appear at his arraignment, a bench warrant was issued for his arrest. Almost 1 year later, the prosecutor learned of the defendant's location and he was arrested. The defendant moved to dismiss for violation of speedy trial arguing that the State failed to exercise good faith and diligent efforts because it could have located him through his attorney or through his parents. This court rejected his argument holding,

> Here, the State in full compliance with the court rules obtained a summons for Larsen's appearance, served it by mail, and then obtained a warrant for his arrest. CrR 2.2(a), (b)(2), (d)(2). We hold that even though the State could in fact have located Larsen either through his attorney, or through his parents, whose address was known, its actions in trying to locate him were sufficient to constitute a diligent, good faith effort.

25 Wn. App. at 623; *see also Miffitt,* 56 Wn. App. at 793-94 (holding that the State exercised good faith due diligence by mailing a summons to the defendant's last known address).