[Nos. 72872-1; 72875-5. En Banc.]
Argued February 27, 2003. Decided September 11, 2003.

THE CITY OF SEATTLE, *Respondent*, v. ANDREW GUAY, *Petitioner*.
THE STATE OF WASHINGTON, *Respondent*, v. DONALD ACKERMAN, *Petitioner*.

*Christine A. Jackson* (of *The Defender Association*), for petitioner Guay.

*Jon Fox* and *Andrea King* (of *Fox, Bowman & Duarte*), for petitioner Ackerman.

*Thomas A. Carr, City Attorney,* and *Mary Lynch, Assistant,* for respondent City of Seattle.

*Norm Maleng, Prosecuting Attorney for King County,* and *Deanna J. Fuller, Deputy,* for respondent State.

IRELAND, J. — In this consolidated case, Petitioners, Andrew Guay and Donald Ackerman, each contend that their right to a speedy trial was violated by delays in bringing them to trial. They argue that neither the City of Seattle nor King County exercised due diligence in securing Guay's or Ackerman's presence in court, respectively. Each Petitioner moved to dismiss for violation of his speedy trial right; both motions were denied by the lower courts and the superior court on RALJ appeal in their respective cases. This court granted discretionary review of the superior court's denial of their motions to dismiss.

We hold that there is no mechanism available to courts of limited jurisdiction to facilitate and compel the transport of misdemeanant defendants between county jails of this state. We distinguish between being amenable to criminal process and being amenable to transport to court. While courts of limited jurisdiction have the inherent authority to issue a transfer order to obtain a misdemeanant defendant's presence in court, this authority does not establish a mechanism that compels the holding county to release the defendant. We hold that CrRLJ 3.3(g)(5) does not contain a due diligence or good faith requirement because the rule's plain language does not reflect such obligations. As such, the time during which each Petitioner was incarcerated in

another county is excluded from their speedy trial calcula-
tions. We therefore affirm the denial of each Petitioner's
motion to dismiss.

## FACTS

*Andrew Guay*

Guay was arrested for possession of stolen property, to
wit, a telephone booth on May 14, 1997. He was held in
King County jail for two days, but was released when
charges were not filed. On December 23, 1997 the case was
transferred to the Seattle City Attorney's office for possible
charges. Meanwhile, in December 1997, Guay was found
guilty on an unrelated felony theft charge in King County
and resided in county jail until February 1998, when he was
transferred to McNeil Island Correction Center (MICC).

The City charged Guay on April 9, 1998 with misde-
meanor possession of stolen property. An intake hearing
was scheduled for April 28, 1998, but when Guay failed to
appear, after notice had been sent to his last known
address, a warrant was issued for his arrest. Notices of this
warrant were sent in April and again in June. Guay learned
of the warrant sometime during his incarceration at MICC.
The record does not reflect any speedy trial demand by
Guay. On September 18, 1998, both Guay's girl friend and a
friend called the warrants office of the Seattle Police De-
partment to tell them Guay was at MICC and indicated his
release was approaching. His girl friend indicated that
Guay would appear in the warrants office for a court date
upon his release. Guay's counselor from MICC also phoned
the warrants office twice in October 1998 and said Guay
would be released on November 12, 1998. Guay was, in fact,
released on that date.

Guay did not appear at the warrants office until January
13, 1999, whereupon the bench warrant that had been
issued the previous April was cleared and Guay was re-
leased on his own recognizance. He was arraigned at an
intake hearing in municipal court on February 2, 1999.

Guay moved to dismiss the charge for violation of the speedy trial rule, CrRLJ 3.3, but the court denied the motion in August 1999, concluding that the time Guay spent in prison at MICC was excluded under CrRLJ 3.3(g)(5) because the City acted with due diligence in securing Guay's presence at trial. He was found guilty and sentenced to 120 days on work release. Guay urges that his speedy trial clock began to run on April 28, 1998. He points to a 300-day delay between the filing of his charges on April 9, 1998 and his first appearance in court on February 2, 1999.

Guay filed a RALJ appeal in King County Superior Court on the speedy trial issue. That court agreed with the municipal court that the time Guay spent in MICC was excluded but under a different rationale, to wit, he had not shown he was amenable to process while incarcerated in MICC, in another county. Guay next filed a motion for discretionary review with the Court of Appeals, which was denied. His motion to modify the commissioner's ruling was also denied by a panel of the court. This court granted his motion for discretionary review.

### *Donald Ackerman*

Ackerman was twice arrested for driving under the influence: on October 27, 1998 in Clark County and on December 19, 1998 in King County. He was charged for the King County offense in Aukeen District Court on January 12, 1999. On January 21, 1999, Ackerman waived arraignment on the King County charge. He was in and out of court for the next year on both charges, during which he missed several appearances. The King County district court docket reflects two speedy trial waivers and an ultimate speedy trial deadline of November 30, 1999. On October 21, 1999, Ackerman pleaded guilty to the Clark County charge and was sentenced to 60 days in jail, to begin immediately. King County was notified of the sentencing four days later.

On November 8, 1999, a trial setting hearing was held on the King County charge during which Ackerman's attorney

informed the court of Ackerman's incarceration in Clark County. The attorney also argued that the court had a duty to transport Ackerman so that his trial could begin within the speedy trial timeline. Because the arresting trooper was unavailable due to injury, a hearing was scheduled for November 17, 1999.

By the November 17, 1999 hearing, Ackerman's attorney had filed two demands for transport, yet Ackerman remained in Clark County jail. At that time, the arresting trooper was still unavailable. The court concluded that there was no mechanism by which district courts could compel the transfer of inmates held in other counties. It therefore held that the time during which Ackerman was jailed in Clark County was excluded from the speedy trial calculation pursuant to CrRLJ 3.3(g)(5). The court then issued an arrest warrant.

Ackerman was released from jail in Clark County on December 19, 1999 and he reported to King County authorities within days of his release. In February, he moved for dismissal on speedy trial grounds, which was denied. In April 2000 Ackerman pleaded guilty on stipulated facts.

On RALJ appeal to King County Superior Court, the court affirmed the district court on the same grounds. Ackerman's motion for discretionary review filed in the Court of Appeals was denied, as was his motion to modify the commissioner's ruling. This court granted his motion for discretionary review.

## ISSUES

Whether a duty of due diligence and good faith inheres in CrRLJ 3.3(g)(5) for speedy trial purposes.

Whether courts of limited jurisdiction have the authority to issue a transport order and to compel the transport of a defendant who is detained in jail or prison outside the county in which the defendant is charged in order to meet the defendant's speedy trial date.

## ANALYSIS

*Standard of Review*

■ We review a trial court's order denying a motion to dismiss for speedy trial purposes for manifest abuse of discretion. *See State v. Mattoon*, 56 Wn.2d 688, 691, 354 P.2d 908 (1960); *State v. Hanna*, 123 Wn.2d 704, 715, 871 P.2d 135 (1994); *State v. Everybodytalksabout*, 145 Wn.2d 456, 478, 39 P.3d 294 (2002).

*Speedy Trial Rules*

Guay and Ackerman urge us to read into CrRLJ 3.3(g)(5) a duty of good faith and due diligence as was done for the superior court rule, CrR 3.3(g)(6). Resolution of this case turns upon whether there is a mechanism facilitating and compelling the transport of incarcerated misdemeanant defendants between county jails.

*Generally*

■ "A defendant has no duty to bring himself to trial . . ." *Barker v. Wingo*, 407 U.S. 514, 527, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), rather, the defendant's appearance in court "depends on the efforts of the prosecutor and law enforcement officials." *State v. Miffitt*, 56 Wn. App. 786, 791, 785 P.2d 850, *review denied*, 114 Wn.2d 1026 (1990).

■ CrRLJ 3.3(c)(1) requires a court of limited jurisdiction to arraign a defendant within 15 days of filing the complaint and to bring the defendant to trial within 90 days of the date of arraignment, provided the defendant is not detained in jail on that charge pending trial. *See also State v. Huffmeyer*, 145 Wn.2d 52, 57, 32 P.3d 996 (2001) (noting that "[w]hen a person is being held in custody in another county on an unrelated charge, he or she is not 'detained in jail on the current charge' for the purposes of CrR 3.3(c)(1)"). "A criminal charge not brought to trial within the time period provided by this rule shall be dismissed with prejudice." CrRLJ 3.3(i).

*Amenability to Process*

The City and King County contend that neither petitioner was amenable to process while incarcerated. Petitioners disagree.

 "Amenable to process" under CrRLJ 3.3 has been defined as: " '[s]ubject to answer to the law; accountable; responsible; liable to punishment.' " *City of Seattle v. Henderson*, 67 Wn. App. 369, 374, 841 P.2d 761 (1992) (quoting BLACK'S LAW DICTIONARY 74 (5th ed. 1979)); *see also Huffmeyer*, 145 Wn.2d at 62 n.4 ("[b]ecause Washington courts have jurisdiction over in-state defendants, a defendant within the state is amenable to process") (citing *State v. Hudson*, 79 Wn. App. 193, 196, 900 P.2d 1130 (1995), *aff'd*, 130 Wn.2d 48, 921 P.2d 538 (1996)). The *Henderson* court went on to define "process" as " 'any means used by [a] court to acquire or exercise its jurisdiction over a person . . . . The word "process," however, as now commonly understood, refers to a summons . . . .' " *Henderson*, 67 Wn. App. at 374 (quoting BLACK'S LAW DICTIONARY 1084-85 (5th ed. 1979)).[1] In *Henderson*, the defendant was considered amenable to process during the period prior to when he failed to appear at his arraignment as he had signed the citation promising in writing to appear and had been in contact with the court regarding a continuance. *Id.* at 377. The defendant has the burden to show his or her amenability. *State v. Roman*, 94 Wn. App. 211, 216, 972 P.2d 511, *review denied*, 138 Wn.2d 1014 (1999).

Guay and Ackerman could have been served their arrest warrants while incarcerated and, in that sense, were amenable to criminal process. We should note, however, there are no procedural due process issues, by way of sufficiency of process, either alleged or apparent in this case. Petitioners are unable to point to any rule, applicable as of the relevant dates herein, requiring the State to perform an exhaustive search to locate a defendant. As will be dis-

---

[1] The sixth edition of *Black's Law Dictionary* provides the same definitions for "amenable" and "process" as cited above. *See* BLACK'S LAW DICTIONARY 80, 1205 (6th ed. 1990).

cussed below, that a misdemeanant is amenable to criminal process is different than being amenable to being present in court while incarcerated in another county.

*Inherent Authority*

Guay and Ackerman argue that courts of limited jurisdiction have inherent authority to order the transport of defendants who are incarcerated beyond that court's county line in order to secure their presence in court. They appear to argue that a transport order is the mechanism available to courts of limited jurisdiction that facilitates the transport of misdemeanant defendants between county jails.

In support, Guay and Ackerman point to RCW 2.28.150, entitled "Implied powers—Proceeding when mode not prescribed" which provides:

[w]hen jurisdiction is, by the Constitution of this state, or by statute, conferred on a court . . . all the means to carry it into effect are also given; and in the exercise of the jurisdiction, *if the course of proceeding is not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted* which may appear most conformable to the spirit of the laws.

(Emphasis added.) Guay and Ackerman argue that the italicized portion allows courts of limited jurisdiction to order the transport. The City and King County counter that no statute confers the authority upon courts of limited jurisdiction to compel the transport of defendants who are serving sentences in other counties, and, therefore, those courts do not have the authority to do so.

■ Ackerman was charged for DUI in King County pursuant to RCW 46.61.502; Guay was charged for possession of stolen property under a provision of the Seattle Municipal Code. The jurisdiction of the district court and municipal court in Ackerman's and Guay's case, respectively, is clearly provided by statute, thus, by its terms, RCW 2.28.150 applies. The plain language of RCW 2.28.150 provides that once jurisdiction is established, the court may adopt "any suitable process or mode of proceeding . . . which

may appear most conformable to the spirit of the laws." Issuing an order for transport to secure a defendant's presence is conformable to the spirit of the laws. It is therefore reasonable to conclude that courts of limited jurisdiction have the inherent authority to do so when otherwise granted jurisdiction in a case.

To an extent, then, Guay and Ackerman are correct: the plain language of RCW 2.28.150 appears to confer upon courts of limited jurisdiction the authority to issue a transport order. We must distinguish, however, between having the authority to *issue* a transport order and *compelling* another county to follow the order. As will be discussed further below, the prosecuting county may have the inherent authority to issue a transport order, but there is no mechanism currently in place that compels the authorities and courts in another jurisdiction to obey that order. Accordingly, the City's and King County's argument is partially correct. We decline to equate the issuance of a transport order with a mechanism compelling transport in this case. Too many questions as to the allocation of transport expenses and procedure are left unanswered without a mechanism. Therefore, the inherent authority to issue a transport order is insufficient to provide a transport mechanism.

*Statutory Interpretation: Due Diligence, Good Faith, and CrRLJ 3.3(g)(5)*

Resolution of this case requires us to compare counterpart rules, CrRLJ 3.3(g)(5) and CrR 3.3(g)(6). CrRLJ 3.3-(g)(5), the rule at issue here, excludes from speedy trial calculation

> [t]he time during which a defendant is detained in jail or prison *outside the county* in which the defendant is charged or in a federal jail or prison and the time during which a defendant is subjected to conditions of release not imposed by a court of the State of Washington. . . .

(Emphasis added.) The rule for superior courts, CrR 3.3-(g)(6), excludes from speedy trial calculation

[t]he time during which a defendant is detained in jail or prison *outside the state of Washington* or in a federal jail or prison and the time during which a defendant is subjected to conditions of release not imposed by a court of the State of Washington.

(Emphasis added.)

Recall that Guay and Ackerman ask us to read a duty of due diligence and good faith into CrRLJ 3.3(g)(5), as has been done with CrR 3.3(g)(6). In *State v. Anderson*, 121 Wn.2d 852, 855 P.2d 671 (1993), this court interpreted CrR 3.3(g)(6). There, the defendant was detained in federal prison. Transfer from federal prisons is governed by the Interstate Agreement on Detainers (IAD), which allows, but does not require, the prosecuting state to file a detainer before the defendant may demand a speedy trial. The State had not done so, even after the defendant had made repeated speedy trial demands with both the court and the prosecutor's office. *Id.* at 854. When the defendant moved for dismissal for violation of speedy trial, the State argued, pursuant to CrR 3.3(g)(6), that the time during which the defendant was incarcerated in federal prison was excluded from calculation of his speedy trial deadline. *Anderson*, 121 Wn.2d at 853. This court disagreed, holding that, for speedy trial purposes, the State must exercise good faith and due diligence in "attempting to bring to trial defendants who are in out-of-state or federal jails or prisons" when a mechanism is available to do so and when the defendant has expressed a desire for transport to facilitate his speedy trial.[2] *Id.* at 858-59, 863-64. That duty was not fulfilled because the State's complete lack of effort to obtain his presence at trial, after repeated speedy trial demands by the defendant, deprived the defendant of his speedy trial remedies. *Id.* at 864-65. Accordingly, the speedy trial time-

---

[2] The *Anderson* court relied on previous cases that had read a duty of good faith and due diligence into other provisions of CrR 3.3, beginning with *State v. Williams*, 87 Wn.2d 916, 557 P.2d 1311 (1976), which relied on the *ABA Standards Relating to Speedy Trial* (Approved Draft 1968) as a basis for implying a due diligence requirement under the speedy trial rule because there was evidence in the *Washington Proposed Rules of Criminal Procedure* (1971) that indicated the ABA standards served as a basis for the section relating to when a defendant should be considered "absent" for trial. *Williams*, 87 Wn.2d at 920.

line was not tolled while the defendant was incarcerated in federal prison. *Id.* at 864.

There are two key differences between CrRLJ 3.3(g)(5) and CrR 3.3(g)(6). First, when applying CrR 3.3(g)(6), superior courts have a mechanism to facilitate and compel the transfer of defendants detained out of state, namely, the IAD, or RCW 72.68.020(1)(b) providing for the transport of felons between prisons and jails within the state. The parties dispute which of them bears the burden to show the presence of a mechanism. We perceive that the party seeking to utilize the mechanism should bear the burden, one that Petitioners have been unable to meet in this case. No mechanism, similar to the IAD or RCW 72.68.020, exists for courts of limited jurisdiction to engage for transporting misdemeanant defendants between the various county jails of this state.

Second, while we strive to construe the criminal rules for courts of limited jurisdiction and those for superior courts as consistently as possible, we find that consistent interpretation between CrRLJ 3.3(g)(5) and CrR 3.3(g)(6) is not feasible. *See City of Seattle v. Crockett*, 87 Wn.2d 253, 256, 551 P.2d 740 (1976) (the procedural rules "were designed to operate in conjunction with one another and not to require meaningless and useless duplication"); *State v. Mack*, 89 Wn.2d 788, 792, 576 P.2d 44 (1978) ("The identity of purpose, together with the philosophy enunciated in *Crockett*, warrants our construction of both rules in a consistent manner.").

 We apply rules of statutory construction to the interpretation of court rules. *State v. Greenwood*, 120 Wn.2d 585, 592, 845 P.2d 971 (1993). Where the language of a rule is plain and unambiguous, the language will be given its full effect. *State v. Smith*, 117 Wn.2d 263, 270-71, 814 P.2d 652 (1991). Language in a court rule is unambiguous unless it is susceptible to more than one reasonable meaning. *State v. Johnson*, 119 Wn.2d 167, 172, 829 P.2d 1082 (1992). CrRLJ 3.3(g)(5) applies to defendants incarcerated *outside the county* in which the defendant is charged and CrR 3.3(g)(6) applies to those detained *outside the state of*

*Washington* or in a federal jail or prison. Presumably, but for the IAD, the time spent by a defendant in an out-of-state prison would be excluded from speedy trial calculation. We give the plain language of CrRLJ 3.3(g)(5) its full effect here because the lack of a mechanism—some mechanism that would compel the transfer of misdemeanant defendants between counties within the state—renders a parallel construction untenable.

*Anderson* is not persuasive in this case because, simply put, it held that the State must exercise due diligence and good faith in securing a defendant's presence from another jurisdiction *when there is a mechanism to do so. Anderson*, 121 Wn.2d at 858. The IAD was such a mechanism. *Id.*

The absence of such a mechanism in the case of misdemeanors is also significant because it leaves no guidance as to the allocation of costs or burdens involved in the transport of misdemeanant defendants between the counties. This type of allocation is legislative in nature and exceeds the authority of this court. Such a legislative determination would include: which county must incur the expense of transporting the defendant? Is the defendant transported back to the original holding county after his hearing and which county bears that expense? How is transport funded generally? What procedure must be followed? Where must the transfer process be initiated: in the receiving county or holding county? May the receiving county compel release before the term is served in the holding county?

Petitioners submit electronic printouts of docket entries reflecting that at least one court of limited jurisdiction has issued transport orders for a misdemeanant defendant that have been obeyed by the holding county. They therefore move to supplement the record with this "evidence" of a "mechanism by which the district courts, on application by the prosecutor or otherwise, can cause a misdemeanor defendant to be transported between counties for resolution of misdemeanor cases." Mot. to Supplement the R. at 1-2. The fact that a transfer was conducted in one instance fails to prove that a uniform mechanism exists to provide regu-

larity in the transfer of misdemeanant defendants. These docket entries also fail to show the existence of a mechanism since what happens in one court of limited jurisdiction is not binding authority on any other court of limited jurisdiction.

Thus, despite our conclusion that Guay and Ackerman were amenable to criminal process, without a mechanism for their release and transport, they were not amenable to being present in court while incarcerated in another county. Similarly, while courts of limited jurisdiction have the inherent authority to issue transport orders, that authority alone does not create a mechanism for transport of misdemeanant defendants. Because of the differences in language between the two rules and the lack of a mechanism for transport of misdemeanant defendants, we do not read into CrRLJ 3.3(g)(5) a duty of due diligence akin to that read into CrR 3.3(g)(6) in *Anderson*.

*Application*

*Andrew Guay*

Guay believes his speedy trial clock began to run on April 28, 1998, the date of his intake hearing. Thus, his speedy trial deadline would have been July 29, 1998. Guay asserts that 300 days elapsed between his intake hearing and his first appearance in court on February 2, 1999. He first contends that the City had an obligation to find him, through phone calls to jails and prisons, in order to serve the arrest warrant that had been issued on the pending charges. He also contends that the City should have verified his receipt of the notices of those charges. Moreover, he submits that when the City had notice of his whereabouts after the call from Guay's girl friend in September 1998, the City should have contacted Guay to determine whether he wanted to exercise his speedy trial right at that time.

Not only was the arrest warrant directed to all peace officers of the state pursuant to CrRLJ 2.2(d)(1), but notice of the arrest warrant was also sent to Guay's last

known address in accordance with CrRLJ 2.2(d)(2), a rule that is intended for the delivery of a summons; Guay points to no rule-based obligation, when serving criminal process, to search the state's prisons and county jails to locate a defendant when he has left no forwarding address. The call from Guay's girl friend was the first and only notice the City had that he was incarcerated. She explicitly stated Guay would turn himself in after his approaching release, from which the City reasonably inferred that that was Guay's preference, as opposed to exercising his speedy trial rights in September 1998. While RCW 72.68.020(1)(b) provides a mechanism for the transport of *felons* between prisons and jails within the state, the record does not reveal that Guay ever made a speedy trial demand or any attendant demand to be transported. At no time did Guay attempt to notify the City of his whereabouts. That Guay felt some urgency to be tried is not borne out by his own actions since, after being released in mid-November 1998, he did not present himself to the warrants office until mid-January 1999. We affirm the decision of the superior court on RALJ appeal and hold that the time during which Guay was incarcerated at MICC tolled his speedy trial clock pursuant to CrRLJ 3.3(g)(5) and his speedy trial right was not violated by the delay.

### Donald Ackerman

Ackerman's speedy trial deadline was November 30, 1999, but his first court appearance was not until February 2000. At the first hearing on November 8, 1999, Ackerman's attorney informed the district court that Ackerman was serving a 60-day sentence in Clark County. The docket reflects that the district court had notice of this sentence four days after it was imposed. Two demands for Ackerman's transfer were filed with both the Aukeen District Court and Clark County jail in early November 1999. Ackerman contends that after receiving notice of his location and his demands for transfer, the prosecutor should have requested the district court to issue an order for Clark County to release Ackerman into King County police cus-

tody for transfer. By not doing so, he argues that the County failed to act in good faith and with due diligence.

Since we decline to infer an obligation of good faith and due diligence into CrRLJ 3.3(g)(5), the time Ackerman spent incarcerated in Clark County falls squarely within the excluded time period in CrRLJ 3.3(g)(5). Therefore, Ackerman's speedy trial clock was tolled during the time he was in Clark County jail and there was no violation of his speedy trial right.

## CONCLUSION

We hold there is no mechanism available to courts of limited jurisdiction to facilitate and compel the transport of misdemeanant defendants between county jails of this state. While we hold that Petitioners were each amenable to criminal process while incarcerated, we distinguish that from being amenable to transport to court. The plain language of RCW 2.28.150 confers upon courts of limited jurisdiction the inherent authority to issue an order for the transport of misdemeanant defendants serving sentences outside county lines. However, this authority alone is insufficient to constitute a mechanism that compels the holding county to release a misdemeanant defendant in accordance with the transport order. We decline to read elements of good faith and due diligence into CrRLJ 3.3(g)(5), as was done with CrR 3.3(g)(6) in *Anderson*, and hold that *Anderson* is not persuasive in this case because there is no mechanism that compels the transport of misdemeanant defendants between counties in this state. *Anderson* is further distinguishable due to the incongruent wording between the rule in that case and the rule here. We therefore affirm the superior court's decision on RALJ

appeal in both Guay's and Ackerman's cases denying each their motion to dismiss for violation of speedy trial.

ALEXANDER, C.J., and BRIDGE, CHAMBERS, OWENS, and FAIR-HURST, JJ., concur.

SANDERS, J. (dissenting) —

It is simply not arguable, nor has any court ever held, that the trial of a petty offense may be held in secret, or without notice to the accused of the charges, or that in such cases the defendant has no right to confront his accusers or to compel the attendance of witnesses in his own behalf. "Under our Constitution," . . . "the condition of being a [petty offender] does not justify a kangaroo court."

John M. Junker, *The Right to Counsel in Misdemeanor Cases*, 43 WASH. L. REV. 685, 705 (1968) (quoting *In re Gault*, 387 U.S. 1, 28, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967)). As stated by Professor Junker, it is imperative that petty offenders be apprised of the same rights as felony defendants. The majority refuses to apply the same speedy trial right to misdemeanant defendants charged in courts of limited jurisdiction. I dissent.

A simple example illustrates the effect of the majority's ruling. A person convicted of a misdemeanor in Snohomish County Superior Court is sentenced to 364 days in county jail. That same person has an outstanding misdemeanor charge in Seattle municipal court. According to the majority, the municipal court cannot compel the transport of that person to stand trial and when that person is charged in a court of limited jurisdiction but incarcerated in another county, the speedy trial clock is tolled. Consequently, the individual must wait 364 days before the municipal charges can be addressed. Conversely, if the defendant were first convicted of a felony, the majority believes RCW 72-.68.020(1)(b) provides a court of limited jurisdiction with the mechanism to transport the defendant immediately. Majority at 303. Under the majority view disparate rights will ensue depending on whether a defendant is incarcer-

ated on felony or misdemeanor charges. I posit that speedy trial rights do not sway in and out of existence based on the mere incarceration classification of the defendant.

The majority concedes that courts of limited jurisdiction have the authority to issue transport orders for misdemeanant defendants, but finds such authority insufficient to compel transport of a prisoner because, "there is no mechanism currently in place that compels the authorities and courts in another jurisdiction to obey that order." Majority at 298. The majority concludes when a misdemeanant defendant is charged in a court of limited jurisdiction but incarcerated in another county, the speedy trial clock is tolled. For the majority, a perceived lack of procedural regulation trumps the incarcerated defendant's speedy trial right.

However, the jurisdiction of municipal and district courts is undisputed. RCW 3.66.100(1) governing district courts provides that "[e]very district judge having authority to hear a particular case may issue criminal process in and to any place in the state." The statute governing municipal courts for cities over 400,000 states, "[a]ll process from such court runs throughout the state." RCW 35.20.110. In addition, state statute provides said courts with the power to dictate necessary procedure and mechanism:

**Implied powers—Proceeding when mode not prescribed.** When jurisdiction is, by the Constitution of this state, or by statute, conferred on a court or judicial officer *all the means to carry it into effect are also given*; and in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by statute, *any suitable process or mode of proceeding may be adopted* which may appear most conformable to the spirit of the laws.

RCW 2.28.150 (emphasis added). In *State ex rel. McCool* the Court of Appeals applied the plain meaning of this statute holding, "RCW 2.28.150 is sufficiently broad to supply any deficiency of procedure which has been omitted in the primary grant of jurisdiction." *State ex rel. McCool v. Small Claims Court*, 12 Wn. App. 799, 801, 532 P.2d 1191 (1975)

(footnote omitted) (holding that RCW 2.28.150 permits the small claims department of district court to order new trial when procedure is not established). Thus, courts of limited jurisdiction specifically are imbued with the authority to establish necessary procedure, i.e., mechanism, where such mechanism is otherwise absent. The mechanism of transport, which so concerns the majority, flows from the court's jurisdiction found in RCW 3.66.100, RCW 35.20.110, and the rule-making authority of RCW 2.28.150.

The majority states that it "strive[s] to construe the criminal rules for courts of limited jurisdiction and those for superior courts as consistently as possible . . . ." Majority at 300. This statement is consistent with this court's holding in *State v. Mack* that the rules for courts of limited jurisdiction and the rules for courts of general jurisdiction should be construed in a consistent manner. 89 Wn.2d 788, 792, 576 P.2d 44 (1978). However here the majority finds that it is "not feasible" to provide a consistent interpretation between CrRLJ 3.3(g)(5) and CrR 3.3(g)(6)—which govern tolling of the speedy trial clock when a defendant is detained in jail or prison. Majority at 300. I rely on the same authority as the majority, but conclude CrRLJ 3.3(g)(5) and CrR 3.3(g)(6) should be read consistently.

In *State v. Anderson* this court interpreted CrR 3.3(g)(6) to impose a duty on the State. 121 Wn.2d 852, 858, 855 P.2d 671 (1993). We held the speedy trial period tolls during incarceration only if the State acts with due diligence and good faith in procuring the presence of the defendant. *Id.* However, *Anderson* dealt with a defendant incarcerated in federal prison and charged in superior court. *Id.* There the Interstate Agreement on Detainers provides a procedure for the transport of a federal prisoner to stand trial in state court. *Id.* The majority refuses to extend *Anderson* to courts of limited jurisdiction because it fails to find a mechanism similar to the Interstate Agreement on Detainers. Majority at 300. But as explained above, RCW 2.28.150 confers procedural-rule-making power on courts of limited jurisdiction and the statute's plain meaning ensures that proce-

dural authority flows concurrently with actual authority. I see no meaningful difference between the authority granted in RCW 2.28.150 and the mechanism provided by the Interstate Agreement on Detainers. Case law requires CrRLJ 3.3(g)(5) and CrR 3.3(g)(6) be read consistently. *See Mack*, 89 Wn.2d at 792. Thus the majority is mistaken as CrRLJ 3.3(g)(5) also imposes a duty of due diligence and good faith on the State.

Having established that the State owes a duty of due diligence and good faith to petty offenders, we must ask whether that duty was here met. Guay argues that the City of Seattle had an obligation to find him in order to serve their warrant. This assertion is partially correct, for it is the government's burden to demonstrate diligence. *State v. Roman*, 94 Wn. App. 211, 216, 972 P.2d 511 (1999). However, there are no clear provisions in case law pertaining to whether the State must have notice of the defendant's location as a prerequisite to finding the defendant amenable to process. Arguably, though, if a defendant disappears without notifying the State as to his location, the State's exercise of due diligence may be unsuccessful. The State need not perform an exhaustive search for a defendant it has no idea where to find. However, if the State does have an idea of the defendant's whereabouts, either via direct notice by the defendant or because the State had other contacts with the defendant, the State's obligation of due diligence is not met absent reasonable follow up. *See State v. Wirth*, 39 Wn. App. 550, 553, 694 P.2d 1113 (1985) ("Where law enforcement officials have information which could lead readily to the person sought through standard follow-up inquiries, those leads must be pursued.").

Prior case law guides determining the extent of due diligence and good faith required of the State. In *State v. Huffmeyer* an arrest warrant was issued but returned to the court with a notation that Huffmeyer was in custody. 145 Wn.2d 52, 56, 32 P.3d 996 (2001). Thus the State was aware of Huffmeyer's incarceration and failed to act on that knowledge, thereby violating his speedy trial right. *Id.* at

65. In a similar case, *State v. Alexus*, the State was notified of the defendant's incarceration by a notation on the warrant form. 91 Wn.2d 492, 494, 588 P.2d 1171 (1979). When the State failed to act upon that information, it violated the defendant's speedy trial right. *Id.* at 497. In these cases the State was aware of the defendant's incarceration and the issuance of an arrest warrant was not enough to meet the State's burden.

Here telephone calls by third parties notified the State of Guay's whereabouts as Guay's girl friend and his counselor repeatedly called the police department. These phone calls notified the City that Guay was incarcerated at McNeil Island Corrections Center and the City did not act in any way on that information. Accordingly, the time Guay spent in prison did not toll his speedy trial clock and his case should be dismissed with prejudice. *See* CrRLJ 3.3(i).

By the same token Ackerman's attorney informed the district court that Ackerman was serving a jail sentence in Clark County. The attorney also filed two demands for Ackerman's transfer, but neither was acted upon. There is no question that King County, Clark County, and the court were aware of Ackerman's incarceration and the only action taken to secure Ackerman's presence was the issuance of an arrest warrant. King County failed to exercise due diligence because it did not ask the district court for a transfer of Ackerman after repeated demands were made for transport. Accordingly, the time during which Ackerman was incarcerated in an out-of-county jail should not be excluded pursuant to CrRLJ 3.3(g)(5) and his case should be dismissed with prejudice. *See* CrRLJ 3.3(i).

Because the rules for courts of limited jurisdiction and those for superior court should be read consistently with one another, the same good faith and due diligence requirements that are deemed inherent in CrR 3.3(g)(6) should also be considered a part of CrRLJ 3.3(g)(5). Additionally, the legislature has specifically provided courts of limited jurisdiction with the authority to create a mechanism for

the transport of misdemeanant defendants incarcerated in out-of-county jails.

Therefore, I would reverse Guay's and Ackerman's convictions.

JOHNSON and MADSEN, JJ., concur with SANDERS, J.